THE BACHMAN COMPANY, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (SPENCE), Respondent. (Two Cases).

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 26, 1996.

Decided Oct. 22, 1996.

Marshall A. Haislup, III, Lafayette, for Petitioner.

Timothy E. Spence, pro se, Respondent.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

The Bachman Company (Employer) appeals from an order of the Workmen's Compensation Appeal Board (WCAB), dated December 20, 1993, which affirmed, as modified, a referee's[1] decision to grant benefits to Timothy E. Spence (Claimant). Employer also appeals from a December 29, 1995 deemed denial of its request for a rehearing before the WCAB.

Claimant worked for Employer as a route driver/salesman, selling to and servicing Employer's accounts. His duties included loading Employer's products onto the company truck and delivering and unloading those products at the various stores on his route. On April 17, 1991, Claimant went to a gasoline station to fuel his truck and became involved in a physical altercation with another patron of the station, resulting in injuries to Claimant's back, neck and shoulder.

On August 13, 1991, Claimant filed a Claim Petition alleging that he had sustained a disabling work-related injury as a result of the April 17, 1991 incident. (Claimant's R.R. at 4a–5a.) Employer filed a timely answer denying the material allegations in Claimant's petition, and hearings were held before a referee.

A first hearing was held on October 1, 1991 in the nature of a pre-trial conference, at which Claimant presented an evidence packet he had prepared. Claimant also briefly described how he had sustained his injuries when he was assaulted while attempting to buy gas for Employer's truck. (O.R., Hearing of October 1, 1991 at 5–6.) Employer explained that it was defending against Claimant's action because it felt Claimant's injury was not work-related but, rather, was due to the act of a third person which was directed at Claimant out of personal animosity unconnected to Claimant's employment.

(O.R., Hearing of October 1, 1991 at 6–7.) The referee then stated that he would schedule the case for an evidentiary hearing on the next available date and directed the parties to present any medical or fact witnesses at that time.[2] (O.R., Hearing of October 1, 1991 at 8–9, 11–12.)

At the second hearing, on November 12, 1991, Claimant testified on his own behalf and provided an account of the April 17, 1991 incident, summarized by the referee as follows:

> On April 17th after going to a Giant Food Store, the claimant stopped at a gas station. He was waiting in line. As he was waiting to get to the pump another car swung around the gasoline island, pulled in front of claimant's vehicle and blocked the whole island. Claimant waited. After the other man got gas, he got in his car and inched forward. The claimant was 15 to 20 feet in front of the other vehicle. The other vehicle had sufficient room to go left and exit between claimant and the service pumps. The other vehicle kept coming forward. Claimant was easing forward. The other vehicle sped up slightly and ended up catacorner [sic] in front of the right hand corner of the claimant's truck. *Claimant could not move or he would have* hit the other vehicle's door. The other vehicle could have continued to go at an angle and get out, but the driver stopped his car and got out. He walked around the rear of his car, [a]round the front of the truck to the driver's door and asked the claimant if he was going to back up. Claimant said 'no I'm in a big truck and cannot see behind me, you can back up or go out.' The other man said 'I don't have to back up for anyone, I can do anything I want.' Claimant said 'that doesn't make you a real nice guy.' The other man said

1. Referees are now called Workers' Compensation Judges under the 1993 amendments to the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4. *See* Act 44, Act of July 2, 1993, P.L. 190. However, because this case came before the referee prior to the effective date of the amendments, August 31, 1993, we will refer to the referee as such and not as a Workers' Compensation Judge.

2. In response to the referee's inquiry, Claimant indicated that, in addition to his own testimony, he would present medical evidence and one fact witness in support of his claim. (O.R., Hearing of October 1, 1991 at 9.) Employer informed the referee that it might wish to present medical testimony to support its position and that it intended to offer the testimony of Claimant's alleged assailant. (O.R., Hearing of October 1, 1991 at 9–11.)

something to the effect that he can do anything he wants. The other man reached in grabbed the claimant, slabbed [sic] him against the steering wheel to the right, jerked the claimant over and slammed him against the back of the seat, the side of the wooden partition to the claimant's left and then pulled him out of the truck. Claimant's feet hit the ground, his knees were buckled, his toes stuck [sic] the ground. The other man straightened the claimant up. He slammed the claimant back against the back of the truck. A protruding rib [of the truck] struck the claimant. The man pulled his fist back, the claimant said 'if you hit me, I'll see you in court.' A woman came up screaming at the other man. Claimant was let go. He memorized the other license number. As the man passed by the claimant he straight armed claimant. Claimant called the police and waited for them to come.

(Referee's Finding of Fact, No. 3.)

In addition to calling the police, Claimant stated that he called Employer's Office Manager, Carol Weida, and reported the incident.[3] (Referee's Finding of Fact, No. 6.) Claimant testified that he "got really tight" about an hour after the incident and sought medical attention that same evening.[4] Subsequently, Claimant saw Stuart A. Hartman, D.O., Medical Director of the East Shore Rehabilitation Center, who continues to treat Claimant. Claimant testified that because of the therapy he was receiving, his condition had improved; however, he stated that since the time of the incident, he has been sore in the center of the back and the neck and shoulder blade area, with the pain radiating to the right. He stated that he has periods of intense pain and some periods of minor relief, but that he never has complete relief from this problem. (Referee's Finding of Fact, No. 4.)

After Claimant had presented his evidence,[5] the referee asked Employer what evidence it would present; Employer's counsel replied that he did not have the file with him and requested additional time to see if other hearings would be necessary.[6] Claimant objected, noting that it was agreed at the October 1, 1991 hearing that arrangements for witness examination were to have been completed prior to the second hearing.[7] However, the referee determined that he would hold the record open and wait to hear from Employer as to whether it would request another hearing.

A third hearing was held on February 25, 1992, at which time Claimant introduced fi-

---

3. Weida testified at the November 12, 1991 hearing and confirmed that Claimant had called her to report the incident; Weida stated further that, during the conversation, Claimant asked if his injury was covered by Employer. According to Weida, she then checked with Employer and called Claimant back, advising him to send all the bills in because the claim would be covered. (Referee's Findings of Fact, Nos. 11, 17; Claimant's Exhibit C–2.)

4. Claimant made an appointment with Richard J. Boal, M.D., and called Employer to arrange for time off to see Dr. Boal. The day after this call, two days after the April 17, 1991 encounter, Claimant learned that Employer had terminated him for non-performance of job duties due to medical restrictions. (Referee's Findings of Fact, Nos. 7, 13; Claimant's Exhibits Nos. C–4, C–5.) Claimant kept his appointment with Dr. Boal, who took MRIs and X-rays of Claimant.

5. In addition to his own testimony and that of Weida, Claimant introduced the eighteen exhibits from his evidence packet. Exhibits C–6, C–7, C–10, C–11, C–14 and C–16 included various medical bills, to which Employer objected on grounds that Claimant failed to provide medical testimo-

ny to establish that these bills were reasonable or necessary. Exhibits C–8, C–9 and C–10 consisted of medical reports objected to by Employer on the basis of hearsay. Exhibits C–17 and C–18 were bills relating to Dr. Hartman's first deposition, which ultimately was excluded from evidence. The referee overruled Employer's objections and received Exhibits C–2 through C–12 and C–14 through C–18 in evidence; however, the referee sustained Employer's objections to the admission of Exhibits C–1 and C–13, both of which were Employer's first reports of work-related claims by Claimant.

6. Apparently, the attorney who had been handling the case for Employer had taken ill, and another member of his law firm was called in at the last minute to attend the hearing. (O.R., Hearing of November 12, 1991 at 39.)

7. The referee agreed to treat Claimant's objection to further delay as a request for penalties and interest, (Referee's Finding of Fact, No. 20), a request that the referee subsequently denied. (Referee's Conclusion of Law, No. 5.)

nancial records [8] and Dr. Hartman's deposition testimony [9] into evidence. Following admission of Claimant's evidence, the referee asked Employer to present its evidence. Employer stated that it wanted to present the testimony of Vincent Hill, Claimant's assailant, but was unable to do so at that time. Employer contended that it had written a letter to the referee on November 18, 1991, requesting a subpoena to bring Hill in as a witness, but that the referee had failed to respond to that request. Therefore, Employer renewed its request for the subpoena and asked the referee to relist the case so that Employer could present Hill's testimony.

However, the referee insisted that the file contained no such letter, stating that had he received the subpoena request, he would have granted it as a matter of course. Moreover, the referee told Employer that if it had not received a requested subpoena, Employer need only to have called, and one would have been sent automatically. Thus, the referee denied Employer's request to relist the case for a fourth hearing and closed the record without any evidence from Employer.

On June 24, 1992, the referee issued an opinion and order granting Claimant's Claim Petition and awarding him continuing benefits at a rate of $313.05 per week, based on an average weekly wage of $469.58. The referee concluded that Claimant had satisfied his burden of proving that he remained disabled as a result of a work-related injury; further, the referee concluded that, by presenting no evidence, Employer had failed to meet its burden of establishing that Claimant's injury was due to reasons personal to a third party and not related to Claimant's employment. (Referee's Conclusions of Law, Nos. 1, 6.)

Employer appealed to the WCAB, which affirmed the referee's decision as to the award of benefits.[10] Employer then filed a Petition for Rehearing before the WCAB, (Employer's R.R. at 138a–43a), and a Petition for Review with this court. (Employer's R.R. at 134a–37a.) The latter was held in abeyance pending action by the WCAB on the Petition for Rehearing. (Employer's R.R. at 145a). The Petition for Rehearing was deemed denied on December 29, 1995, and, subsequently, was also denied by the January 6, 1996 order of the WCAB. (Employer's brief, Appendix C.) Employer filed a Petition for Review from both the deemed denial and the WCAB January 6, 1996 order and, on January 23, 1996, this court granted Employer's request to consolidate its three Petitions for Review.[11]

8. Claimant noted that, on November 18, 1991, Employer sent him a letter and a Statement of Wages indicating Claimant's pre-injury average weekly wage at $417.60, an amount that differed from the $433.46 Claimant had calculated using the Notice of Financial Determination sheet from the employment office. Thus, Claimant submitted both the Statement of Wages and the Notice of Financial Determination into evidence for the referee's decision on this matter. (O.R., Claimant's Exhibit C–19.)

9. Claimant first deposed Dr. Hartman on October 29, 1991 and tried to introduce that deposition into evidence at the November 12, 1991 hearing. However, Employer objected to its admission on grounds that Claimant's failure to notify Employer of the deposition denied Employer the opportunity to cross-examine the witness. (Referee's Finding of Fact, No. 15.) The referee sustained the objection and it was agreed that Claimant would reschedule Dr. Hartman's deposition so that Employer could be represented. It was this later deposition, taken February 4, 1992, which Claimant introduced into evidence at the February 25, 1992 hearing.

10. However, in its December 20, 1993 order, the WCAB modified the decision of the referee to provide that Claimant not be reimbursed for the cost of Dr. Hartman's October 29, 1991 deposition, which had been excluded from evidence because Claimant failed to notify Employer that the deposition was being taken.

11. In November 1995, this court issued a Rule to Show Cause why Employer's original Petition for Review, docketed at No. 0200 C.D. 1994, should not be dismissed. This rule was discharged by order dated November 29, 1995 providing that Employer's Petition for Rehearing before the WCAB would be deemed denied if not decided by December 29, 1995. (Employer's R.R. at 146a.) When the WCAB took no action on the Petition for Rehearing by that date, Employer deemed it denied per this court's order and filed a protective appeal from the deemed denial, docketed at No. 0044 C.D. 1996. Thus, Employer's appeal from the WCAB's January 6, 1996 order denying Employer's Petition for Rehearing was the third Petition for Review to this court; it was docketed at No. 0146 C.D. 1996. In response to Employer's request, we ordered consolidation of all three Petitions for Review on January 23, 1996.

■ On appeal to this court,[12] Employer first argues that the WCAB erred in affirming the referee's award of benefits, maintaining that Claimant's injuries are not compensable because they fall within the exclusionary provision of section 301(c)(1) of the Workers' Compensation Act (Act).[13]

■ Section 301(c)(1) of the Act provides in pertinent part:

> The term 'injury arising in the course of employment,' as used in this article, shall not include an award caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; . . . .

77 P.S. § 411(1).[14] Employer contends that the record in this case clearly establishes that Hill directed his attack against Claimant because of Hill's personal animosity for

Claimant rather than for reasons relating to Claimant's status as an employee or his employment with Employer.[15] We disagree.

Here, the record indicates that Hill assaulted Claimant because he refused to comply with Hill's request that Claimant back up Employer's truck. The referee found that the size of Employer's truck accounted for this refusal, and because Claimant's unrefuted testimony provides substantial support for this finding,[16] we cannot disturb it on appeal. Because it was precipitated by Claimant's inability to back up the company truck, Hill's attack on Claimant was directly connected to Claimant's employment. Accordingly, we must conclude that Claimant's injuries were not inflicted for personal reasons within the meaning of the exclusionary provisions of section 301 of the Act.

(See Employer's R.R. at 1a–2a.) On April 29, 1996, Employer's Petition for Review at docket No. 0146 C.D.1996 was quashed.

12. Our scope of review on appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law has been made, or whether constitutional rights have been violated. *Meltzer v. Workmen's Compensation Appeal Board (Devereux Foundation)*, 155 Pa.Cmwlth.190, 625 A.2d 109 (1993).

13. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

14. In this section's phrase "because of reasons personal to him," we have interpreted the pronoun "him" to refer to the assailant. However, in the phrase "and not directed against him," the pronoun "him" refers to the employee. *Cleland Simpson Co. v. Workmen's Compensation Appeal Board (McLaughlin)*, 16 Pa.Cmwlth.566, 332 A.2d 862 (1975); *see also, Dolan v. Linton's Lunch*, 397 Pa. 114, 152 A.2d 887 (1959); *Boone v. Workmen's Compensation Appeal Board (Elco Corp.)*, 43 Pa.Cmwlth.452, 402 A.2d 569 (1979). *But see, Vosburg v. Connolly*, 405 Pa. Superior Ct. 121, 126–27, 591 A.2d 1128, 1131 (1991), stating, "[u]nder that exception, an employee is permitted to maintain a common law action against his employer whenever his or her injury is the result of an attack or assault by a third person . . . for reasons that are personal to the *attacked* and not connected with the victim's employment." (Emphasis added, emphasis in original omitted.)

15. We note that no hostile relationship between Claimant and Hill existed prior to the assault;

indeed, the two had never met before. Therefore, we cannot agree with Employer's characterization of the attack as one based on personal *animosity* between the parties. However, we do not believe that the Act requires Employer to establish such animosity. Although we recognize that the provision at issue is sometimes referred to as the "personal animus" exception to the Act, *see Hammerstein v. Lindsay*, 440 Pa. Superior Ct. 350, 655 A.2d 597 (1995), we point out that the provision itself never uses the term "animus" or its equivalent, but, rather, excludes injuries intentionally inflicted by a third party for personal *reasons* unassociated with the victim's employment.

Employer recognizes that the burden of proving the intention to injure for reasons personal to the assailant rests with the employer, *Cleland Simpson*; nonetheless, contrary to the referee's assertion, Employer argues that it can meet its burden of proving these personal motivations without presenting evidence of its own, by relying on the testimony and cross-examination of Claimant. While we agree with Employer on this point, *see Helms v. Workmen's Compensation Appeal Board (U.S. Gypsum Co.)*, 654 A.2d 106 (Pa.Cmwlth.), *appeal denied*, 541 Pa. 645, 663 A.2d 696 (1995); *Kandra v. Workmen's Compensation Appeal Board (Hills Department Store)*, 159 Pa.Cmwlth.251, 632 A.2d 1069 (1993), we conclude that Employer does not succeed in meeting that burden here.

16. Claimant testified as follows:

> He asked me if I was going to back my truck up, and I responded, 'No, I'm in this big truck, you know, I can't even see right behind me. I think you could back up or you could go out at that point.'

Employer also argues that the referee erred in granting benefits to Claimant because Claimant's actions at the time of the injury took him outside the course of his employment. Employer concedes that, as a travelling employee, Claimant would normally have been within the course and scope of his employment while refueling the company vehicle at a gas station. However, Employer maintains that, by actively involving himself in the dispute with Hill, Claimant engaged in actions so wholly foreign to his employment that he removed himself from the course of his employment for purposes of the Act.[17] In making this argument, Employer relies on *Stevens v. Workmen's Compensation Appeal Board (Pennsylvania Gas and Water Co.)*, 124 Pa.Cmwlth.486, 556 A.2d 522 (1989).

In *Stevens*, the claimant, a travelling employee, was injured during an altercation outside the restaurant where he had stopped to get a cup of coffee between assignments. The claimant had parked his vehicle and was walking to the restaurant when he heard a horn and noticed the occupants of another vehicle making obscene gestures at him. At that point, the claimant walked to the car, which was 30–40 feet away, and looked in the driver's side window. The claimant then opened the car door, exchanged confrontational words with the driver and removed his jacket in preparation for a fistfight. Based on these facts, the WCAB reversed the referee's award of benefits, stating that the referee had ignored the *critical* aspects of the claimant's testimony, specifically that (1) the car was 30–40 feet away from the claimant, (2) the claimant walked around to the side of

the car and opened the door and (3) the claimant removed his jacket before the fight ensued. We agreed with the WCAB that these specific actions were all deviations from the claimant's employment which were wholly foreign to the scope of that employment and, thus, affirmed the denial of benefits.

Employer claims that, like the claimant in *Stevens*, Claimant here deviated from his employment through his reactions to Hill's cutting in front of him at the gas pump, specifically by staring at Hill, directing various sarcastic remarks at Hill, edging his truck forward when Hill was trying to maneuver his car out of the space, and refusing to back up when Hill requested him to. We cannot agree with Employer's analogy.

Unlike the claimant in *Stevens*, who approached the other vehicle from a distance and then invited a physical confrontation by opening the door to the other person's car and removing his own jacket, Claimant here never indicated any desire to become embroiled in a physical confrontation with Hill; in fact, Claimant never left Employer's truck until Hill dragged him out during the assault.[18] Indeed, according to Claimant's version of events, accepted by the referee, Hill could easily have exited the station after getting gas, but chose instead to block Claimant's truck so that Claimant could no longer move forward and then get out of his own car and confront Claimant by asking if Claimant was going to back up. When Claimant did not do so, in part because the size of Employer's truck made it difficult,[19] Hill reached

---

(Claimant's R.R. and Employer's R.R. at 17a.)

**17.** The general rule is that injuries sustained, either off or on the employer's premises, while the employee is "actually engaged in the furtherance of the business or affairs of the employer," are compensable as arising in the course of employment. 77 P.S. § 411(1); *Evans v. Workmen's Compensation Appeal Board (Hotwork, Inc.)*, 664 A.2d 216 (Pa.Cmwlth.1995). However, the definition of "course of employment" is broader for travelling employees; when a travelling employee is injured after setting out on the employer's business, it is presumed that he or she was furthering the employer's business at the time of injury. To rebut this presumption, the employer bears the burden of proving that the claimant's actions were so foreign to and removed from his

or her usual employment as to constitute an abandonment thereof. *Id.*

**18.** Claimant testified that when Hill initially cut in front of him, Claimant watched him get gas, sort of staring at him but not saying anything. At one point, Claimant slid the door of his truck open and said "nice guy," then slid the door back shut and sat there. (Claimant's R.R. and Employer's R.R. at 16a.)

**19.** We note that Claimant admitted that it was not *impossible* for him to have backed up, (Claimant's R.R. and Employer's R.R. at 38a); however, we believe that Claimant's refusal to do so where he could not see what was behind him was not only reasonable but also in Employer's interest because Employer would have been re-

inside the truck and began his assault on Claimant. Based on these facts, we can only conclude that the attack on Claimant was the unfortunate result of Claimant's reasonable response to an unexpected situation he confronted during the course of his employment.

 Next, Employer asserts that because Dr. Hartman's testimony was both equivocal and incompetent, it was insufficient to support an award of benefits.[20] First, Employer contends that Dr. Hartman lacked the foundation required to offer a competent opinion regarding causation because he did not testify to any knowledge of an earlier injury suffered by Claimant or whether Claimant had ongoing symptoms from that prior injury. Further, Employer claims that, as of Claimant's first visit on July 16, 1991, Dr. Hartman released Claimant to return to work, (Claimant's R.R. and Employer's R.R. at 61a–62a), and only later speculated that, as of October 8, 1991, Claimant "probably" shouldn't do his regular job. (Claimant's R.R. and Employer's R.R. at 63a.) Emphasizing the word "probably," Employer maintains that Dr. Hartman's testimony was equivocal with regard to Claimant's existing disability. Indeed, Employer notes that, because Dr. Hartman admittedly was unfamiliar with Claimant's work duties,[21] he was in

no position to comment on whether Claimant could resume his regular job duties.

 We believe that Employer's arguments are disingenuous [22] and, after a review of Dr. Hartman's entire testimony, we are satisfied that it is both competent and unequivocal. According to Dr. Hartman, he first saw Claimant on July 16, 1991 for complaints of neck and back pain which started on April 17, 1991 after he was assaulted at a gas station. (Claimant's R.R. and Employer's R.R. at 57a.) After examining Claimant and hearing how his injury occurred, Dr. Hartman diagnosed Claimant as suffering from cervical thoracic strain with somatic dysfunction, myofascial pain syndrome or fibromyalgia pain syndrome with myositis and post-traumatic right shoulder subacromial subdeltoid bursitis. He recommended that Claimant continue with medication and that he begin a physical therapy and work hardening program. (Claimant's R.R. and Employer's R.R. at 59a.) Dr. Hartman opined within a reasonable degree of medical certainty that Claimant's injuries resulted from the incident of April 17, 1991, and he stated that Claimant continues to suffer from the myofascial pain syndrome and thoracic strain initially sustained on that date.[23] (Claimant's

sponsible for any mishap that might have occurred as a result.

**20.** In this regard, Employer correctly notes that, even if Claimant was injured in the course of his employment, his right to recovery under the Act depends upon his successfully establishing that the injury occurred in the course of employment *and* is related thereto. *Halaski v. Hilton Hotel*, 487 Pa. 313, 409 A.2d 367 (1979). Where this causal connection is obvious, medical evidence of causation is unnecessary. *Morgan v. Giant Markets*, 483 Pa. 421, 397 A.2d 415 (1979). However, where the causal connection between the work injury and the disability is not obvious, the claimant must prove the relationship through unequivocal, competent medical evidence. *Cardyn v. Workmen's Compensation Appeal Board (Heppenstall)*, 517 Pa. 98, 534 A.2d 1389 (1987). Here, Employer asserts that the cause of Claimant's disability is not obvious and, in fact, medical records submitted by Claimant suggest that Claimant actually suffered from an ongoing preexisting problem rather than from injuries caused by the April 17, 1991 incident.

**21.** Dr. Hartman testified:
... so when I had initially seen him, I felt that he would be capable of I would say most likely

performing his job since I don't know exactly the exact job description of a Bachman driver. (Claimant's R.R. and Employer's R.R. at 61a–62a.)

**22.** As to Employer's first argument, we note that Employer had a full opportunity to cross-examine Dr. Hartman and could have questioned him at that time with regard to any possible preexisting condition of Claimant's. Having chosen not to do so, Employer cannot complain now of a lack of such testimony. In making its second argument, Employer misconstrues Dr. Hartman's testimony by removing it from context. Contrary to Employer's claim, when Dr. Hartman initially saw Claimant on July 16, 1991, he released Claimant to do *some* work, contingent on his not having to lift over 50 pounds. On October 8, 1991, because of a flare up of Claimant's symptoms, Dr. Hartman recommended that Claimant resume physical therapy and cease working, and, as of the date of his deposition, Dr. Hartman stated that Claimant was only capable of lifting a maximum of 20 to 35 pounds. (Claimant's R.R. and Employer's R.R. at 61a, 63a, 67a.)

**23.** Dr. Hartman's deposition includes the following testimony:

R.R. and Employer's R.R. at 59a–61a.) With continued therapy, Dr. Hartman anticipated Claimant's eventual return to unrestricted work; however, Dr. Hartman indicated that, at the present time, Claimant's injuries still precluded his doing any heavy lifting. (Claimant's R.R. and Employer's R.R. at 61a–64a, 67a–68a.) (*See* Referee's Findings of Fact, Nos. 24–28.) This unequivocal testimony, accepted by the referee, provides evidence sufficient to establish that Claimant remains disabled as a result of the injuries suffered in the incident of April 17, 1991.

Employer also argues that a remand is required because the referee denied Employer due process by prematurely closing the evidentiary record. Employer contends that this case is like *Essi International, Inc. v. Workmen's Compensation Appeal Board (Bowman)*, 132 Pa.Cmwlth.573, 573 A.2d 677 (1990), in which we determined that a remand was necessary where one party was given a full opportunity to present its case while the opposing party was denied the opportunity to present any evidence whatsoever. We do not agree that *Essi* controls here.[24]

In *Essi*, a claimant had presented testimony and medical evidence in support of his claim petition during five hearings before the referee and, at the fifth hearing, requested and received a continuance in order to depose his chief medical witness. Prior to the rescheduled hearing, the referee notified the parties by mail that they were to present all evidence at this "final" hearing because he

would grant no further continuances but would decide the case based on the record as of the conclusion of that hearing. At this last hearing, the referee admitted the deposition of the claimant's medical witness into evidence and then considered the employer's request for a continuance so that it could depose its own medical witness. The referee denied the request, commenting that the parties had been forewarned that the referee intended to close the record at this "final" hearing. The referee awarded benefits on the strength of the testimony of the claimant's chief medical witness, and the WCAB affirmed; however, we vacated the WCAB on appeal. We noted that the claimant had not even rested its case yet and, indeed, the parties had agreed that a continuance would be necessary so that they could both take additional medical depositions. Although critical of the inaction of counsel, we concluded that, by closing the record when he did, "the referee entered a decision on an incomplete and tainted record that by its very nature could not yield competent evidence." *Id.* 573 A.2d at 678.

There are critical differences here which distinguish this case from *Essi*. In *Essi*, the claimant was given, and took advantage of, the opportunity to offer testimony and other evidence in six separate hearings. In fact, it was only during the last of these hearings, which was scheduled in response to the claimant's request for a continuance, that the claimant's medical evidence was admitted into the record. On the other hand, the

---

Q Is there any doubt in your mind that the injury is a result of the incident that occurred on April 17th as described to you by the patient, Mr. Spence?
A No. I feel within a reasonable degree of medical certainty that the injuries which Mr. Spence sustained on 4/17/91 were related to the findings that I found on examination and the diagnoses.
. . . .
[Q] Okay. Having made your diagnosis and studying previous treating physician's notes, can you safely determine that the injury Mr. Spence is now seeking medical relief from is the original injury reported on the date of April 17th?
[A] Yes. I feel Mr. Spence continues to suffer from the myofacial [sic] pain syndrome and thoracic strain which he initially suffered on 4/17/91.

(Claimant's R.R. and Employer's R.R. at 59a–61a.)

24. Additionally, Employer distinguishes this case from the situation in *Cipollini v. Workmen's Compensation Appeal Board (Philadelphia Electric Co.)*, 167 Pa.Cmwlth.25, 647 A.2d 608 (1994), in which we affirmed the dismissal of a claim petition where the claimant's counsel, over the objections of the employer, requested and received numerous continuances over a nine month period in order to depose fact and medical witnesses, yet repeatedly disregarded the referee's deadlines for presenting this evidence. We concede that Employer's actions here may not have been as egregious as those of the claimant's attorney in *Cipollini;* nevertheless, after carefully considering the circumstances in this case, we cannot say that the referee abused his discretion by closing the record when he did.

employer's *sole* opportunity to present evidence was at this designated final hearing, even though at that time the claimant had not yet rested its case. Moreover, precisely because neither side had rested its case, both the claimant and the employer wanted the referee to continue the proceedings.

■ In contrast, here, the referee afforded both Claimant and Employer the identical number of opportunities to present evidence; in fact, although Employer failed to follow the referee's directive to be prepared to offer evidence at the second hearing, the referee, over Claimant's strenuous objection, scheduled a third hearing to provide Employer with another chance to present evidence for the record. However, at the third hearing on February 25, 1992, Employer appeared for the second time during the proceedings without any evidence to present.[25] Employer's only defense for its continued lack of evidence was that the referee had ignored Employer's request for a subpoena, allegedly sent to the referee over three months earlier. The referee had no record that any such request was received and, in fact, Employer offered no evidence that it had made the request; rather, Employer simply asked for a subpoena and a continuance so that it could present Hill's testimony. We agree with the referee that, when the subpoena was not forthcoming, Employer should have pursued the matter rather than further delay the proceedings, particularly where Employer had already failed to present evidence at an earlier hearing and Claimant strenuously objected to Employer's delay of the proceedings at that time. Under these circumstances, we cannot say that the referee abused his discretion by prematurely closing the record.

■ Next, Employer argues that the referee erred by awarding certain medical expenses. Employer does not object to any specific medical bill or bills;[26] rather, it maintains that Dr. Hartman never testified with regard to medical bills and, thus, there was no competent testimony on the record to establish that any of these expenses were related to Claimant's alleged work injury or that the treatment referenced in those medical bills was reasonable or necessary. Again, we disagree.

Although no individual bills were listed or discussed, contrary to Employer's assertion, Dr. Hartman's testimony contains numerous references to Claimant's medical treatment, particularly Dr. Hartman's recommendation that Claimant take part in a continuing program of physical therapy. (*See, e.g.,* Claimant's R.R. and Employer's R.R. at 59a, 63a–64a, 68a.) Further, Dr. Hartman indicated that the medical relief sought by Claimant was, in fact, related to his April 17, 1991 injuries. (Claimant's R.R. and Employer's R.R. at 60a–61a.) Therefore, the referee did not err in holding Employer "responsible for medical bills related to treatment of [C]laimant's injury." (Referee's op. at 8.)

■ Finally, Employer maintains that the referee erred in calculating Claimant's average weekly wage and disability rate. The referee's finding in this regard states, "[t]he average weekly wage is $469.58 and the compensation rate was $313.05." (Referee's Finding of Fact, No. 19.) Although this finding undoubtedly was based on evidence presented by Claimant at the November 12, 1991 hearing,[27] we agree with Employer that it cannot be supported by the record here.

---

**25.** Although indicating at the first hearing, almost five months earlier, that it would introduce Hill's testimony, Employer apparently made no effort to contact Hill to arrange for that testimony or even to ascertain whether Hill's testimony would provide evidence which was either relevant to, or supportive of, Employer's position.

**26.** The WCAB stated in its decision:

As far as the award of medical ... costs is concerned, the [referee] merely ordered that [Employer] be responsible for all medical bills related to the treatment of the claimant's injury. If [Employer], therefore, has objection to the payment of any specific medical bill, it may bring that bill into question by a Petition for Review.

(WCAB op. at 6.)

**27.** At that hearing, the following exchange took place:

[CLAIMANT]: It probably doesn't do any good, but I mean, I heard this exactly the last time, 'I don't have the information in front of me.' 'Do you have the wage information?' They're required to have that. 'No, I don't have that.' REFEREE DEELEY: I took as his average weekly wage—

At the February 25, 1992 hearing, Claimant submitted Exhibit C–19, which consisted of a Notice of Financial Determination and a Statement of Wages, so that the referee could resolve the dispute between Claimant and Employer regarding Claimant's average weekly wage. At that hearing, Claimant indicated that, based on the Notice of Financial Determination, he had calculated his average weekly wage to be $433.46, with a disability rate of $288.68 per week.[28] On the other hand, relying on the Statement of Wages, Employer had determined that Claimant's average weekly wage was $417.60 with a resulting disability rate of $278.40. Without addressing this disagreement or offering an explanation of his own methods of determination, the referee ultimately found an average weekly wage and disability rate which differed from either of the suggested amounts and which does not correspond to the formula set forth in the Act for the calculation of these amounts. *See* sections 306 and 309 of the Act, 77 P.S. §§ 511 and 582. Accordingly, we conclude that the referee erred in determining the amount of Claimant's benefits.

For the reasons given, we affirm the WCAB's December 20, 1993 order granting benefits to Claimant but we remand to the WCAB to remand to the referee for a proper determination of the amount of those benefits. We dismiss as moot Employer's Petition for Review from the December 29, 1995 deemed denial of Employer's Petition for Rehearing.

### ORDER

AND NOW, this 22nd day of October, 1996, the order of the Workmen's Compensation Appeal Board, dated December 20, 1993, is hereby affirmed to the extent that it grants benefits to Claimant. We remand the case to the Workmen's Compensation Appeal Board to remand to the referee for a proper

determination of the amount of benefits to which Claimant is entitled. We dismiss as moot Employer's Petition for Review from the December 29, 1995 deemed denial of Employer's Petition for Rehearing.

Jurisdiction relinquished.

---

[CLAIMANT]: I gave that to you.
REFEREE DEELEY:—what you said, $469.58, which made a comp rate of $313.05.
(O.R., Hearing of November 12, 1991 at 38–39; Claimant's R.R. and Employer's R.R. at 47a–48a.)

28. Originally, Claimant had calculated his average weekly wage to be $469.58, (Claimant's Exhibit C–5); however, at the February 25, 1992 hearing, Claimant himself admitted that he erred in calculating this amount, and that the figure should have been $433.46. (O.R., Hearing of February 25, 1992 at 3; Claimant's R.R. and Employer's R.R. at 74a.)