Wilgro Services, Inc.,               :
               Petitioner        :
                                   :    No. 1932 C.D. 2016
               v.              :
                                     :    Submitted: March 31, 2017
Workers' Compensation Appeal      :
Board (Mentusky),                  :
               Respondents      :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY
JUDGE McCULLOUGH                           FILED: June 28, 2017

       Wilgro Services (Employer) petitions for review of the November 17, 2016, order of the Workers' Compensation Appeal Board (Board) affirming a decision and order of the Workers' Compensation Judge (WCJ) granting the claim petition of Robert Mentusky (Claimant).

## Facts and Procedural History

       On June 27, 2014, while working at a job site assigned by Employer, Claimant jumped off a two-story roof and injured his feet and back. Claimant reported the injuries to Employer that day, and Employer issued a notice of compensation denial on July 7, 2014, contending: (1) that Claimant's injuries were not work-related; and (2) that Claimant "JUMPED FROM ROOF—DELIBERATE

AND INTENTIONAL ACT." (Reproduced Record (R.R.) at 141) (emphasis in original.)

Subsequently, Claimant filed a claim petition, alleging an injury consisting of "bilateral heel fractures and back injuries," which rendered him totally disabled. (Claim petition, ¶¶3-6a; R.R. at 7.) Employer filed a timely answer denying all material allegations and alleging further, *inter alia*, "[a]t the time of the alleged incident, Claimant was beyond the scope of any employment relationship and, hence, is not entitled to any workers' compensation benefits." (R.R. at 7-10, 15-17.)

Claimant testified at a hearing before the WCJ on September 4, 2014. He explained that he was working for Employer as an HVAC mechanic at a building owned by KVK-Tech in Newtown, Pennsylvania, on June 27, 2014, cleaning condenser coils on the air conditioning units, which were located on the roof of the building. He stated that the building varied in height but was mostly one story with some parts as high as two stories. The units on which he worked were between three and eight feet off the ground. That day, he testified that he arrived at 7:00 a.m. and ascended the roof on a ladder placed by roofers who were also working at the building. Claimant testified that he accessed the roof by means of this ladder since the job had begun. He stated that he was never told by the roofers not to use the ladder, and because the ladder had always been left there overnight, he used it as well to leave the roof area when his shift was over. (WCJ's Finding of Fact No. 4.)

On June 27, 2014, he testified that he arrived at 7:00 that morning for work and ascended the ladder, and he used the ladder at lunch break to go down and then back up to the roof. He stated that he finished his job between 2:00 and 2:15 p.m. and gathered his tools and supplies, but when he looked around he saw no one else on the roof and the roofers' ladder was gone. He noted that at no time that day did the roofers ever tell Claimant they were leaving or that they were removing the

ladder. He indicated that the building had a roof hatch which he tried, but found it was locked. He testified that he had a cell phone but did not try the phone for the building owner, KVK-Tech, because whenever he tried that number in the past, he could never get through to actually talk with someone. He stated that he did not try the phone for the owner's maintenance man because Claimant had seen him at lunch and he had told Claimant he was leaving at 1:00, and did not call Employer because its personnel were too far away. He noted that he called "Terry," an employee at KVK-Tech, but got his answering machine, and had the same result with "Andrew," another KVK-Tech employee, and did not leave any message for either man. (WCJ's Finding of Fact No. 4.)

Claimant testified that he never considered calling 911 or any emergency number, nor did he call out for help, bang on the hatch, or walk the perimeter of the roof to look for anyone else. Claimant stated that he proceeded toward the employees' entrance, where the roof was lower and waited about thirty minutes to see someone entering or exiting the building, but that he saw no one. He estimated the roof at that point to be between sixteen and twenty feet off the ground, and because he had successfully made similar jumps in the past and the ground was covered with mulch, he thought he could jump without injury. After jumping into the mulched spot, Claimant felt immediate pain in both feet. Employees of KVK-Tech came to him and eventually, he was taken by ambulance to St. Mary's Hospital. (WCJ's Finding of Fact No. 4.)

Claimant denied that he had deliberately and intentionally jumped off the roof to injure himself, or that he had planned to injure himself on the job. Claimant admitted that he could have used his own ladder to access the roof but that there was limited space to place a ladder because of landscaping work occurring at the same time surrounding the building. He agreed that if he had waited longer, the odds were that someone would enter or leave the building, but he felt he could safely

3

make the jump without hurting himself. In retrospect, he testified, the decision was not smart, but he said he never thought he would get hurt. (WCJ's Finding of Fact No. 4.)

In a deposition taken on November 21, 2014, Claimant submitted the medical testimony of David Hardeski, M.D. Board-certified in orthopedic surgery, Dr. Hardeski testified that his practice is dedicated to treatment of traumatic orthopedic injuries. He testified that he first saw Claimant the day after the incident, and obtained a history from him, which included the fact that Claimant had jumped off the roof. He stated that he reviewed x-rays and diagnosed Claimant with bilateral calcaneus fractures, left medial malleolus fracture, and lumbar spinal fractures at L-4 and L-5. Dr. Hardeski attempted conservative treatment but then performed surgery on July 16, 2014, fixing screws and plates into the bones of both heels. (WCJ's Finding of Fact No. 5.)

On follow-up with Claimant on October 24, 2014, Dr. Hardeski testified Claimant continues to improve with some loss of reduction on the left calcaneus heel. He stated that he prescribed physical therapy for both legs. At the October 24 office visit, Dr. Hardeski testified that Claimant's pain was worse in the left heel than the right, and worse with ambulation. He testified that Claimant uses a cane to walk. Dr. Hardeski concluded that the cause of Claimant's problems was the jump from the roof, and that Claimant was presently disabled and could take up to two years of rehabilitation, with lifelong issues because the prognosis for calcaneal fractures is poor with regard to painless and normal function. (WCJ's Finding of Fact No. 5.)

Claimant's medical evidence was not contested or rebutted by Employer.

However, in a deposition taken on December 5, 2014, Employer submitted the testimony of Nikki Houy, the Human Resources manager for KVK-Tech. She testified that on June 27, 2014, she had been called to the outside of the KVK-Tech building by security, and she saw Claimant on the ground. She stated that

4

Claimant told her he had jumped from the roof. She testified that she asked Claimant why he did not call someone from KVK-Tech and Claimant responded that the number never works. She testified that she then used Claimant's cell phone to call the KVK-Tech number and the phone started to ring, indicating the number was working. She admitted that when Claimant told her to call "Nondu" or "Andy" with her company, the calls went to voice mail for each. She testified that she looked at Claimant's cell phone and saw a call to Andy but not to Nondu. Ms. Houy testified that she put ice packs on Claimant's feet and called 911. She testified that she knew nothing specific about the jobs on the roof or the persons working on the roof. (WCJ's Finding of Fact No. 6.)

Employer presented no evidence to contradict Claimant's testimony regarding his attempts to call people after he noticed the roofers' ladder was gone, but Employer did proffer photographs of the building and the work area, which were not disputed by Claimant. (WCJ's Findings of Fact Nos. 7-8.)

The WCJ found Claimant to have been credible for a number of reasons, including that his testimony as to mechanism of injury and his thought process was uncontradicted, that his testimony was consistent with that of his physician, and that Claimant had been candid "in acknowledging his decision to jump from the roof was not the best decision he has made in his life." (WCJ's Finding of Fact No. 9.)

The WCJ found Ms. Houy credible but that she failed "to provide any significant factual information that contradicted the Claimant's testimony regarding his decision making process." (WCJ's Finding of Fact No. 10.)

The WCJ found Dr. Hardeski credible and considered as well that the medical evidence was not contradicted. (WCJ's Finding of Fact No. 11.)

Accordingly, the WCJ made the following dispositive findings of fact: (1) on June 27, 2014, Claimant was a traveling employee furthering Employer's business, so that he was in the course of his employment when he jumped from the

5

roof; (2) Claimant did not intentionally and/or deliberately attempt to injure himself when he jumped; (3) "[t]his Judge recognizes that Claimant['s] decision was misguided however such is **NOT** a bar from receiving compensation benefits under Pa. Workers['] Compensation Act, a no-fault system;" (4) Claimant was not involved in horseplay when he jumped; (5) "[t]his Judge finds the Claimant had **NOT** contemplated or considered jumping off the roof as the appropriate means of getting off the roof at the end of his work day as he had used the roofer's ladder at the end of each prior work day;" (6) Claimant did not violate any positive work order because there was no "proper protocol established by the Employer if stuck on a roof;" and, (7) Claimant suffered the work injury "while in the course and scope of his employment on June 27, 2014," and his disability is ongoing. (WCJ's Findings of Fact Nos. 12-18) (emphases in original).

Employer appealed to the Board, arguing that the WCJ erred as a matter of law in finding Claimant's injuries compensable because Claimant's actions in jumping from the roof were wholly foreign to his employment and so sufficient to remove him from the course and scope of his employment under this Court's holding in *Penn State University v. Workers' Compensation Appeal Board (Smith)*, 15 A.3d 949 (Pa. Cmwlth. 2011). The Board disagreed, finding that "course of employment" is construed more broadly for a traveling employee such as Claimant and that the proscribed conduct in *Penn State* was distinguishable because it was done on a "whim." (Board op. at 6-9.)

Employer filed a petition for review with this Court,[1] raising the same arguments.

---

[1] Our scope of review is limited to determining whether Findings of Fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer),* 894 A.2d 214, 216 n.3 (Pa.
**(Footnote continued on next page…)**

6

**Discussion**

In a workers' compensation proceeding, the WCJ is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). "As such, the WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part." *Id.* The WCJ's findings will not be disturbed on appeal when they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel, State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990).

Indeed, where both parties present evidence, it is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Further, on appeal, all inferences drawn from the evidence shall be taken in favor of the party prevailing before the WCJ. *Krumins Roofing and Siding v.*

---

**(continued…)**

Cmwlth. 2006). The scope of review on questions of law is plenary and the standard of review is *de novo*. *Pitt Ohio Express v. Workers' Compensation Appeal Board (Wolff)*, 912 A.2d 206, 207 (Pa. 2006).

7

*Workers' Compensation Appeal Board (Libby)*, 575 A.2d 656, 659 (Pa. Cmwlth. 1990).

Section 301(c)(1) of the Workers' Compensation Act (Act)[2] covers any injury "arising in the course of his employment and related thereto," and includes "all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere . . . ."

The pertinent facts are undisputed: Claimant jumped from the roof of the KVK-Tech building at the end of his job duties on June 27, 2014, and suffered injuries to his heels and low back as a consequence, such that he became disabled from working and remains disabled. Employer was based in Morton, away from the job site. Accordingly, neither party disputes that Claimant was a traveling employee.

On appeal, Employer argues that this Court should focus on the intentional, premeditated, deliberate, extreme, and high-risk nature of Claimant's conduct, which would compel a denial of benefits under *Penn State*.

Claimant argues that *Penn State* is distinguishable because Claimant here was a traveling employee and did not act on a "whim," but rather made a difficult decision which, however misguided or stupid, was in the course of employment and related thereto, more consistent with this Court's holding in *Baby's Room v. Workers' Compensation Appeal Board (Stairs)*, 860 A.2d 200 (Pa. Cmwlth. 2004), *appeal denied*, 871 A.2d 193 (Pa. 2005).

In *Penn State*, this Court addressed the situation where an employee who was on an unpaid lunch break at his employer's premises intentionally jumped down a flight of approximately twelve stairs, landing hard and injuring his legs and ankles.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411(1).

8

15 A.3d at 950-51. Claimant testified that "his decision to jump down the flight of stairs was a 'whim,' although he had thoughts of jumping down the steps prior to that date." *Id.* at 951, 954. The WCJ found that the claimant was in the course of his employment when he was injured and the Board affirmed. *Id.* at 951. This Court reversed, noting first that "employees who remain on an employer's premises for their lunch break and sustain an injury are generally considered to be in the furtherance of the employer's business, unless the activity they are engaged in was so wholly foreign to their employment." *Id.* at 953. Because the claimant did not trip or fall down the stairs and was not encouraged to jump, "the facts do not establish that [c]laimant's actions furthered a specific interest of [e]mployer. Finally, [c]laimant's action in jumping the stairs did not maintain any skills necessary to the performance of his job." *Id.* at 954. Accordingly, this Court held:

> The premeditated, deliberate, extreme, and inherently high-risk nature of [c]laimant's actions are sufficient to remove [c]laimant from the course and scope of his employment and distinguish this case from other cases, such as *Baby's Room* . . ., where a claimant engaged in an inconsequential departure from his work activities and received benefits for his injuries. . . . We cannot conclude, therefore, that [c]laimant was in furtherance of [e]mployer's business or affairs when he jumped down the flight of stairs.

*Id.* at 954-55 (citations omitted).

The claimant in *Baby's Room* was delivering furniture to a customer of his employer and when he finished the delivery and was walking back to the truck, he jumped up to touch the rim of a hoop on a basketball backboard that was in the customer's driveway, when his hand slipped off the rim, he fell backwards, and he hit his head on the concrete pavement, suffering a traumatic brain injury. 860 A.2d at 202. The WCJ granted the claimant's claim petition and was affirmed by the Board. *Id.* at 202-03. This Court affirmed the award of benefits, finding that although the

9

parties all agreed that the claimant was not furthering his employer's business, we held:

> Because an interval of leisure would certainly include short cessation from work duties, we would allow that definition [of intervals of leisure] to include [c]laimant's actions of running from the delivery truck and jumping up to touch the rim of a basketball hoop, and then consider those actions as an inconsequential departure from delivering furniture for [e]mployer.

*Id.* at 205-06.

This Court also noted that "[w]hether a claimant is a traveling or stationary employee is relevant for determining whether an injury sustained while on a departure from work duties is compensable. Injuries sustained by traveling employees are given more latitude when considered if compensable . . . . Because [c]laimant's duties require him to travel daily from employer's warehouse to various locations to deliver furniture, he is a traveling employee." *Id.* at 203 n.5.

Claimant here was a traveling employee. As such, he is entitled to a presumption that he was furthering Employer's business when he was injured. "To rebut this presumption, the employer bears the burden of proving that the claimant's actions were so foreign to and removed from his or her usual employment as to constitute an abandonment thereof." *Bachman Company v. Workers' Compensation Appeal Board (Spence)*, 683 A.2d 1305, 1311 n.17 (Pa. Cmwlth. 1996).

Employer argues that it rebuts the presumption of Claimant furthering Employer's business or affairs by applying *Penn State* and considering the similarities between the two claimants: (1) both voluntarily jumped; (2) both actively considered whether they would be injured; (3) neither claimant tripped or fell; (4) neither employer encouraged either claimant to jump; (5) neither claimant was performing his job duties when jumping; and, (6) neither claimant was maintaining

10

any job skill necessary to the performance of his respective job. (Employer brief at 19.)

Claimant responds that reliance on *Penn State* is inappropriate because: (1) Claimant was a traveling employee while the claimant in *Penn State* was not; (2) Claimant was finishing his job on the roof while the claimant in *Penn State* was on his lunch break; (3) Claimant's decision was made because the ladder which had been there was gone, in contrast to the claimant in *Penn State* jumping on a whim; and, (4) departing from a job site not on Employer's premises was not so foreign to and removed from his usual employment as to constitute an abandonment of his employment. (Claimants brief at 9-11.) We agree with Claimant.

Employer errs when it conflates its fifth point above, that is, Claimant was not performing his job duties when he jumped from the roof, with the requirement for an award of benefits to a traveling employee being that he or she was furthering the employer's business. Certainly, jumping off a roof was not one of Claimant's job duties, but exiting a work site is a necessary component of any job and so advanced Employer's business and affairs. Moreover, the present case does not involve a stationary employee acting on a whim or lark, as in *Penn State*; nor does it involve a traveling employee taking an interval of leisure, as in *Baby's Room*. Rather, the case at bar is closer to what this Court faced in *Bachman Company*, that is, the decision of a referee[3] that was supported by the "unrefuted testimony" of a claimant who had found himself in an unexpected and dangerous situation of being confronted by an angry person while refueling his employer's truck, and being assaulted, with the claimant sustaining injuries. 683 A.2d at 1310. This Court affirmed the award of benefits, holding, "we can conclude that the attack on

---

[3] WCJs were known as referees prior to the amendments to Section 401 of the Act, 77 P.S. §701, effective August 31, 1993. *See* Section 14 of the Act of July 2, 1993, P.L. 190, No. 44.

11

[c]laimant was the unfortunate result of [c]laimant's reasonable response to an unexpected situation he confronted during the course of his employment." *Id.* at 1312.

The Board here addressed this issue squarely when it concluded that Employer failed to meet its affirmative defense of proving that Claimant's actions were so foreign to and removed from his employment as to constitute an abandonment of employment. (Board op. at 8.) "We agree," stated the Board, "that the decision to jump off the roof rather than to call 911 or to wait for someone to come out of the building was not the best decision Claimant could have made. Even so, he was not engaged in horseplay but was merely trying to get off the roof at the end of his work day." *Id.*

While Claimant's decision to jump was not advisable, may not have been a smart move, and may have been misguided, we cannot say that it was so unreasonable as to make the action so foreign to and removed from Claimant's job as to constitute an abandonment of that job. Rather, here, Claimant was a traveling employee who had reasonably used the ladder of other trades people at that job site to enter and exit the working area, and who unexpectedly found his means of egress removed when his job was over.

**Conclusion**

Because Claimant was not engaged in horseplay, nor acting on a whim, and his action in jumping from the roof was not so unreasonable and removed from his job to constitute abandonment, the Board did not err in affirming the WCJ's decision finding that Claimant was injured in the course of his employment and entitled to total disability benefits.

Accordingly, the Board's order is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wilgro Services, Inc., :
                 Petitioner :
                 : No. 1932 C.D. 2016
             v. :
                 :
Workers' Compensation Appeal :
Board (Mentusky), :
                 Respondents :

## *ORDER*

AND NOW, this 28th day of June, 2017, the order of the Workers' Compensation Appeal Board dated November 17, 2016, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge