# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jacob Keith, :
                    Petitioner :
                           :
              v. : No. 591 C.D. 2015
                           : SUBMITTED: October 16, 2015
Workers' Compensation Appeal :
Board (SEPTA), :
                   Respondent :

BEFORE:     HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                 **FILED: January 19, 2016**

Claimant Jacob Keith petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) denying his claim petition. We affirm.

Claimant was a bus driver for the Southeastern Pennsylvania Transportation Authority (SEPTA or Employer) on February 10, 2012, when he allegedly suffered injuries during an altercation with a passenger who did not pay his fare. Claimant filed a claim petition on May 31, 2012, asserting that he sustained a work-related right shoulder injury, a facial scar and ongoing disability due to the incident. Employer then filed an answer alleging, *inter alia*, that Claimant was not in the course and scope of employment when he was injured and

that, therefore, his claim was barred. Employer also filed a Notice of Workers' Compensation Denial, averring that Claimant was not in the course and scope of employment at the time of his injury. The WCJ held a number of hearings in this matter, including a hearing on July 24, 2012, in which the WCJ agreed to bifurcate the case on the question of whether Claimant was in the course and scope of his employment when he was injured.

Both Claimant and Employer submitted evidence to the WCJ on this discrete issue. Claimant testified on his own behalf regarding the incident, and Employer submitted video evidence taken from Employer's bus. By decision dated March 14, 2014, the WCJ denied Claimant's claim petition because she concluded that, based on the evidence before her, Claimant was beyond the course and scope of employment when he suffered the alleged injuries.

In the WCJ's third finding of fact attendant to her March 2014 decision, she specifically recounted Claimant's pertinent testimony at the July 24, 2012, hearing, as follows:

> (a)   On February 10, 2012, while working as a driver for SEPTA, [Claimant] picked up a passenger at Jonestown Avenue, heading southbound. (N.T., p. 7). A male passenger came aboard the vehicle, using a female Transpass (bus pass specific to a female passenger). The Claimant asked the passenger if he was male or female. (N.T., pp. 7-8). The passenger flippantly asked the same question back to Claimant.
>
> (b)   Claimant testified that the passenger continued to swipe the female Transpass and "proceeded to walk to his seat." The Claimant then "immediately pushed the red button for police help" because "I felt that there was going to be an emergency at hand." (N.T., p. 8). The Claimant kept his eye on his passenger, and after pushing

2

the red button, "… immediately got up and approached the passenger, asking the passenger several times to vacate the vehicle." (N.T., p. 9). The passenger allegedly indicated that he was not going to leave the bus, and Claimant returned to his seat.

(c) Claimant testified that when he approached his bus seat, he saw the reflection of the passenger taking a "Mike Tyson" stance. He indicated that the passenger lunged at him, and therefore, he lunged back. (N.T., p. 10). Then the passenger struck him in the left eye in the aisle of the bus. (N.T., pp. 10-11). Claimant testified that, after sustaining the blow, he was "delirious," stumbled and fell backwards on the seats, with the passenger on top of him. (N.T., p. 12). Claimant sustained injuries to his right shoulder and his face was bloody. (N.T., p. 13). Claimant testified that the passenger then ran off of the bus and Claimant picked up a "chock" [wheelstop] and proceeded to run after him. (N.T., pp. 12-16). Claimant testified that he was trying to catch the passenger to hold him until the police arrived. (N.T., p. 17).

(d) … On cross-examination, Claimant admitted that he knew that the passenger was male before he asked the passenger whether he was male or female. (N.T., p. 26). Claimant admitted that he did not ask the passenger to pay the fare. (N.T., p. 26). Claimant admitted that there were training procedures that he had undergone in reference to handling fare disputes. (N.T., p. 27). Claimant admitted that a proper check-in procedure would involve asking the passenger for the proper fare. (N.T., p. 28).

(e) Claimant admitted that nothing happened with the passenger until the Claimant physically got out of the driver's seat and approached the passenger. <u>Claimant testified that the passenger was walking towards the back of the bus when Claimant approached him and that is when the fight started.</u> (N.T., pp. 31-32). Claimant testified that, after the passenger ran off of the bus, he chased him with a chock outside of the bus. (N.T., pp.

3

34-35). Although he applied for unemployment compensation, Claimant is not physically ready to return to work.

[WCJ's Decision (dated March 14, 2014) at 3-4, Finding of Fact (FF), No. 3 (emphasis in original)].

In her eighth Finding of Fact, the WCJ states that Claimant's lawyer eventually withdrew all objections to the DVD of the incident; that, during a review of the video evidence, "Claimant is seen making the first overture towards the passenger by running into him"; and that "[t]here has been no physical contact made by the passenger to the Claimant prior to the Claimant jumping towards him." [*Id.* at 5, FF, No. 8 (emphasis in original)]. The WCJ also stated in this finding that "[t]he outside-of-bus video recorder shows Claimant running around the back end of the bus with the chock in his right hand, raised above shoulder level, chasing the passenger." [*Id.* at 5-6].

Moreover, in her tenth finding of fact, the WCJ recounted that, at the June 20, 2013, hearing, after Claimant's attorney withdrew previously voiced objections to the video, Claimant "testified … contrary to his prior testimony, he forgot to indicate that the passenger 'threw the first jab'"….." [*Id.* at 6, FF, No. 10]. The WCJ rejected Claimant's testimony to the effect that he was in the course and scope of his employment when he was injured and instead relied on the videotape surveillance to determine that Claimant was "outside the scope of his employment when he confronted the passenger in an aggressive manner, engaged in a physical altercation and chased the passenger after the passenger had voluntarily exited the vehicle." [*Id.*, FF, No. 11]. The WCJ further credited the testimony of Employer's witnesses Paul Berger, who authenticated the bus video, Jerrick Croston, who testified that all of the rules in Employer's operations manual

4

are in effect with respect to all of its employees, and Thomas Ropars, who testified to Claimant's violation of Employer's rules, including those against fighting and assault of a passenger. [*Id.* at 4-6, FF, Nos. 4-6 and 12]. The WCJ also rejected the testimony of Claimant's union representative, Andre Jones, that Claimant acted in self-defense when he fought with the passenger, noting Claimant's aggressive stance on the video. The WCJ found Claimant would not have sustained his injuries had he not violated Employer's positive work order against fighting. [*Id.* at 5-7, FF, Nos. 7 and 13]. The WCJ also found the video to be more credible than Claimant's testimony and that "[t]he videotape depicted Claimant as the aggressor and instigator, not the passenger." [*Id.* at 7, FF, No. 14]. The WCJ further determined that "Claimant took himself out of the course of employment when he decided to get out of his driver's seat to pursue the passenger, rather than follow SEPTA procedure." [*Id.*]

After the WCJ denied Claimant's claim petition, Claimant appealed to the Board, which affirmed the WCJ's decision. In doing so, the Board noted, *inter alia*, that the video evidence sufficiently supported the WCJ's finding "that Claimant made the first overture towards the passenger by running into him" and that, in this way, he violated a positive work order of Employer. [Board Decision, No. A14-0341, at 6.] The Board further noted that "because Claimant actually engaged in a physical altercation with the passenger, including chasing him outside the bus, his actions were wholly foreign to his regular duties [so] as to take him outside the scope of his employment." [*Id.* at 6-7]. Claimant's appeal to this Court followed.

It bears repeating that, in a claim petition proceeding, the claimant maintains the burden of establishing his right to compensation and of proving all of

5

the elements necessary to support a benefits award, including proof that he sustained the injury in the course and scope of employment. *Miller v. Workers' Comp. Appeal Bd. (Millard Refrigerated Servs. & Sentry Claims Serv.)*, 47 A.3d 206, 208 (Pa. Cmwlth. 2012). Key to ascertaining whether an employee was in the course of employment is whether he was injured while actually engaged in furtherance of the employer's business or affairs, whether on the employer's premises or elsewhere. *Scher v. Workers' Comp. Appeal Bd. (City of Phila.)*, 740 A.2d 741, 749 (Pa. Cmwlth. 1999); Section 301(c)(1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

As a general rule, injuries that are sustained either on or off of the employer's premises while the employee is actually engaged in the furtherance of the employer's business or affairs are compensable as occurring in the course of employment. *Bachman Co. v. Workmen's Comp. Appeal Bd. (Spence)*, 683 A.2d 1305, 1311 n.17 (Pa. Cmwlth. 1996). Moreover, the definition of "course of employment" is more broadly interpreted for traveling employees, *i.e.*, when a traveling employee is injured after embarking on an employer's business, it is presumed that the employee was furthering the employer's business at the time that he was injured. *Id.* In order to rebut this presumption, the employer bears the burden of proving that the claimant's actions were so removed from and foreign to his usual employment as to amount to an abandonment thereof. *Id.* Whether an employee is acting in the course and scope of his employment at the time of injury is a question of law to be determined based on the WCJ's findings of fact. *Pennsylvania State Univ. v. Workers' Comp. Appeal Bd. (Rabin)*, 53 A.3d 126, 131 (Pa. Cmwlth. 2012).

6

On appeal, Claimant initially argues that he sustained injuries in the course and scope of his SEPTA bus driver job because his fight with the passenger emanated from his essential job function of collecting bus fares. While, in limited circumstances not found here, Claimant's argument might have some merit, in this case, Claimant testified and the WCJ specifically found that Claimant did not ask the passenger involved in this incident for bus fare; instead, Claimant merely asked him if he were a man or a woman, knowing before he did so that the passenger was a man. [FF, No. 3(d)]. Moreover, video evidence from the bus, as well as portions of Claimant's testimony, support the WCJ's finding that, despite pushing the police call button and waiting for aid in the event he needed it, Claimant physically confronted the passenger when there was no immediate reason to do so. [FF, Nos. 8 and 11].[1] It is beyond cavil that Claimant's aggressive physical actions, not required in self-defense, were wholly foreign to his job as a bus driver. As in *Stevens v. Workmen's Compensation Appeal Board (Pennsylvania Gas and Water Company)*, 556 A.2d 522 (Pa. Cmwlth. 1989), where the claimant therein, a traveling customer repairman being taunted by people in another vehicle, was "not in an accident or attacked, but instead walked toward the vehicle, opened the door, challenged and exchanged words with the driver and removed his jacket" prior to a fistfight, *id.* at 524, Claimant in this instance also abandoned his employment by spoiling for a fight and unnecessarily engaging in an altercation that substantially deviated from Employer's objectives. Claimant's first argument therefore fails.

---

[1] Claimant testified that, while the passenger threw the first punch, the passenger did so after Claimant approached him while he was walking to the back of the bus. [Notes of Testimony, Hearing of July 24, 2012, at 30-32.]

7

Next, Claimant asserts that the WCJ's decision was not supported by substantial, competent record evidence because it was based (1) on an operator's manual that was issued after Claimant was hired as well as (2) on video evidence that was not properly safeguarded. Both arguments lack merit. First, Employer introduced the operator's manual to show that Claimant was trained in various SEPTA procedures, but, as set forth above, Claimant's actions in physically confronting the passenger were so foreign to his employment as to take him out of the course of that employment in any event. Second, because Claimant's counsel withdrew any previous objection to the video at the June 20, 2013, hearing, [Notes of Testimony, (N.T.), Hearing of June 20, 2013, at 4], Claimant cannot properly raise any issues with respect to the video or its chain of custody at this late date. *See Rox Coal v. Workers' Comp. Appeal Bd. (Snizaski)*, 807 A.2d 906, 913-914 (Pa. 2002) (providing that issues not sufficiently preserved below are deemed waived).

Claimant further argues that the WCJ's decision crediting Employer's fact witnesses was not reasoned and fails to provide a sufficient basis for this Court's meaningful review. We disagree with Claimant's assessment. The WCJ outlined in a detailed manner the proofs submitted to her, including all of the live witness testimony and the video evidence. She specifically recounted the testimony of Messrs. Berger, Croston and Ropars to the extent that they, *in toto*, explained their work duties, Claimant's work duties, Employer's rules and regulations and the reasons for Claimant's discharge, and she credited these witnesses based on that testimony. She also made clear that she did not believe Claimant's explanation of the incident based on the video that she reviewed and the fact that Claimant altered his testimony regarding the specifics of what occurred after the objection to

8

the video was withdrawn by his counsel.[2] She further rejected the testimony of Claimant's union representative, Mr. Jones, that Claimant acted in self-defense because she believed, based on her review of the evidence, that Claimant acted aggressively in confronting the passenger, fighting the passenger and chasing the passenger from the bus. Our Supreme Court explained in *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1053 (Pa. 2003), that, "in a case where the fact-finder has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible, in the absence of some special circumstance, could be sufficient to render the decision adequately 'reasoned.'" Such is the case here, and more. Thus, Claimant's argument that the WCJ's decision was insufficiently reasoned also lack merit.

Finally, Claimant argues that, in the event the above allegations of error are rejected, the case should be remanded for consideration of after-acquired evidence. Specifically, Claimant asserts that there is now a witness, named on more than one police report involving this incident, who will corroborate Claimant's statements that he acted in self-defense and defense of the bus passengers and not in an aggressive manner. We decline Claimant's request for rehearing in this regard.

First, Claimant offers no reason why the testimony he describes as "after acquired" was previously unavailable given Claimant's acknowledgement that the witness's "statement was taken by Police Detective White" and that the

---

[2] Claimant stated at the June 20, 2013, hearing that he did not initially mention that he got out of his seat due to "the initial first blow from the individual" because Claimant "was just going by what I recommend" [sic] and "I wasn't actually asked that by, of course, [former counsel] at the time." [N.T., Hearing of June 20, 2013, at 6-7].

witness "was named on both the Philadelphia and SEPTA Transit Police Reports." [Claimant's brief at 45]. Claimant's assertion that the witness "did not come forward until a recent arbitration on the same set of facts," *id.*, is clearly not adequate explanation to support a rehearing request. Second, although the Board has broad powers to grant a rehearing "when justice requires," *Puhl v. Workers' Compensation Appeal Board (Sharon Steel Corp.)*, 724 A.2d 997, 1001 (Pa. Cmwlth. 1999), a rehearing will not be granted where the alleged after-acquired evidence is merely cumulative evidence offered to strengthen weak proofs that have already been presented. *Id.* at 1002 n.10. The WCJ in this case had before her not only the live testimony of Claimant with respect to what occurred, but also video evidence of the incident. The additional testimony Claimant seeks to offer at this late date is not substantially new, and it is certainly not required for a just result.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

10

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Jacob Keith,                                    :
                     Petitioner                 :
                                                :
              v.                                :  No. 591 C.D. 2015
                                                :
Workers' Compensation Appeal                    :
Board (SEPTA),                                  :
                     Respondent                 :

# **O R D E R**

AND NOW, this 19th day of January, 2016, the order of the Workers'
Compensation Appeal Board in the above-captioned matter is hereby affirmed.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge