Celotex Corporation, Petitioner *v.* Commonwealth
of Pennsylvania, Workmen's Compensation Appeal Board and Romona Hargust, Mother of John
T. McIntyre, II, Ronald Hargust and Rhonda
Hargust, Respondents.

Argued February 5, 1979, before Judges CRUMLISH,
JR., WILKINSON, JR. and MENCER, sitting as a panel of
three.

*David F. Kaliner,* with him *Kaliner and Joseph,* for petitioner.

*Gerald J. Haas,* for respondents.

OPINION BY JUDGE WILKINSON, JR., March 28, 1979:

This is an appeal by petitioner Celotex Corporation (employer) of a decision by the Workmen's Compensation Appeal Board (Board) which affirmed a decision of a referee granting workmen's compensation death benefits to three minor claimants. Employer protests the granting of benefits to two of these minor claimants. We affirm.

John Timothy McIntyre (decedent) was crushed to death in a shingle making machine while in the course of his employment on October 31, 1972. In November of 1972, a fatal claim petition was filed by his parents. In March of 1973, another fatal claim petition was filed by Mrs. Romona Hargust, a woman with whom decedent was living at the time of his death; the beneficiaries named were a posthumously born child of Mrs. Hargust and decedent and two other children of Mrs. Hargust's, Ronald and Rhonda Hargust. Mrs. Hargust asserted that decedent stood "in loco parentis" to Ronald and Rhonda (claimants).

In August of 1975, following the several hearings at which extensive testimony was offered, decedent's parents withdrew their fatal claim petition.

On June 18, 1976, the referee found benefits due to all three children. Employer appealed to the Board, but only that part of the decision which granted bene-

fits to Ronald and Rhonda. On November 3, 1977, the Board affirmed the referee. This appeal followed.

Section 307 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §562, provides in pertinent part that:

> Compensation shall be payable under this section to or on account of any child. . . . If members of decedent's household at the time of his death, the terms 'child' and 'children' shall include step-children, adopted children and children to whom he stood in loco parentis, and shall include posthumous children.

Petitioner maintains that there was not substantial evidence to support the referee's findings of fact which led to the conclusions that decedent stood in loco parentis to claimants, and that they were members of his household—the two requirements of the statute. The pertinent findings of fact were:

> 3. The decedent was unmarried and from March 1971 until the time of his death except for about one month, the decedent lived at 2214 Wanamaker Street, Philadelphia, Pennsylvania.

> 4. During that period he lived at the Wanamaker Street address with Romona Hargust and her minor children, Ronald Hargust, Jr., born September 19, 1965 and Rhonda Hargust, born April 7, 1967 and also during much of the time with the sister of Romona Hargust, Diane Harris.

> 5. During the time the decedent lived at Wanamaker Street he paid 1/3 of the expenses of maintining the household including rent (from April, 1971), food, utilities, telephone, and disciplined Ronald and Rhonda Hargust and took them for walks, provided them with entertainment, selected the boy's clothing, shared in the payment for the clothes of both children,

and the children referred to the decedent as their father.

. . . .

7. During the above period, the decedent customarily slept at the Wanamaker Street address, kept his clothes, many personal papers and stereo set there, took most of his regular meals there, received mail at that address, including finance company letters and telephone calls from creditors to whom decedent was delinquent in payments, all indications that the decedent actually resided at the Wanamaker Street address.

The pertinent conclusions of law were:

5. At the time of his death, the decedent stood in loco parentis to the minor children Ronald Hargust, Jr. and Rhonda Hargust who were members of the decedent's household at the time of his death.

6. The decedent stood in loco parentis to John T. McIntyre, II by supplying elements of support during the period of his gestation during which he was a member of the decedent's household.

After reading the testimony we are satisfied that there was substantial evidence for the referee to so find and conclude. A reading of the testimony gives one a fairly good picture of the day-to-day life of decedent. And though it is apparent that he maintained a close relationship with his parents, it is also clear that he, Mrs. Hargust, and the children constituted a household and that he assumed the role of father in that household. He disciplined them, selected the son's clothing, took them on picnics, played with them, paid for one-third of their food and clothing, and they called him father.

This Court, in a case which included a similar issue, *Penn Sanitation Co. v. Hoskins,* 10 Pa. Commonwealth Ct. 528, 531, 312 A.2d 458, 459-60 (1973), found that the testimony of the mother that "the decedent supported her illegitimate child [not decedent's], disciplined the child, paid for the child's food and clothing, and considered the child as his natural child" supported the finding that decedent stood in loco parentis to the child.

A reading of the record here will support the same conclusion.

Accordingly, we will enter the following

ORDER

AND NOW, March 28, 1979, the order of the Workmen's Compensation Appeal Board dated November 3, 1977 at No. A-72073 is affirmed and judgment is entered against Celotex Corporation and/or its insurance carrier Aetna Life and Casualty Company in favor of Romona Hargust as parent and guardian of Ronald Hargust, Jr. and Rhonda Hargust and John T. McIntyre, II for weekly compensation benefits as follows:

(a)    From November 1, 1972 to December 15, 1972 —$82.71 weekly for Ronald Hargust, Jr. and Rhonda Hargust;

(b)    From December 16, 1972—$94.00 weekly for Ronald Hargust, Jr., Rhonda Hargust, and John T. McIntyre, II until September 19, 1983 when Ronald Hargust, Jr. reaches age 18;

(c)    From September 19, 1983—$82.71 weekly for Rhonda Hargust and John T. McIntyre, II until April 7, 1985 when Rhonda Hargust reaches age 18; and

(d)    From April 7, 1985—$63.01 weekly for John T. McIntyre, II to December 16, 1990 when he reaches age 18.

Interest is assessed on all deferred payments of compensation due claimants at the rate of 10 per cent per annum.

Credit is allowed the payments made by the defendants of $63.01 weekly from December 16, 1972 to date including interest of 10 per cent per year paid on such amount from December 12, 1972 to September 28, 1976.

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. In *Kransky v. Glen Alden Coal Co.*, 354 Pa. 425, 428, 47 A.2d 645, 646-47 (1946), our Supreme Court stated that

> [w]hile the support and maintenance of a dependent child is a fact of evidentiary value in determining whether the one furnishing the support stands *in loco parentis* to the child, it is necessary that the evidence as a whole be sufficient to justify a finding that the supporting person intended to assume the *rights, duties and responsibilities* of a lawful parent to the child. (Emphasis in original.)

A proper definition of a person in loco parentis to a child is one who means to put himself in the situation of a lawful father of the child with reference to the father's office and duty of making provision for the child.

My reading of this record fails to convince me that John McIntyre had the intention to assume a parent's responsibility for Ronald Hargust and Rhonda Hargust. Convincing evidence to support this conclusion is that his employment application to the Celotex Corporation in February of 1972 shows *no* minor dependents, and his Blue Cross form which he filled out shortly after being employed also listed *no* dependents. It is clearly evident from the decedent's *own* written words that *he* did *not intend* to place himself in the

position of lawful father to Ronald Hargust and Rhonda Hargust.

Furthermore, the natural father of Ronald Hargust and Rhonda Hargust is living, and there is neither allegation nor proof that he was unable to provide for the children. Since I am of the view that it cannot be reasonably inferred that John McIntyre intended to provide for the children of the senior Ronald Hargust in fulfillment of the duty of a lawful parent, I would reverse the order of the Workmen's Compensation Appeal Board entered in the above captioned case.