**David JOHNS, Deceased, c/o Lori Jean Thomas, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BALMER BROTHERS CONCRETE WORKS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 29, 2005.
Decided June 14, 2005.

Kevin C. Allen, Lancaster, for petitioner.

Dennis L. Platt, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, J., PELLEGRINI, J., and COHN JUBELIRER, J.

OPINION BY Judge COHN JUBELIRER.

Lori Thomas (Claimant), on behalf of her minor children Samantha Thomas and Sean Tyler Thomas (children), petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board) that reversed the Workers' Compensation Judge's (WCJ) decision to grant death benefits to her children pursuant to Section 307 of the Workers' Compensation Act (Act).[1] On appeal, Claimant argues that David Johns (Decedent) stood *in loco parentis* to her children.

On June 18, 2001, Claimant filed a Fatal Claim Petition asserting that Decedent suffered a fatal head injury while working in the course and scope of employment for Balmer Brothers Concrete Works (Employer). She alleged that she was the common-law wife of Decedent and that her two children were eligible dependents for death benefits because Decedent stood *in loco parentis* to them.

The WCJ conducted multiple hearings between August 1, 2001 and December 17, 2002. In support of her petition, Claimant, in addition to her own testimony, offered the testimony of: 1) her ex-husband who

---

1. Act of June 2, 1915, P.L. 736, *as amended,*   77 P.S. § 562.

was the biological father of her two children, Theodore Brian Thomas; 2) her children, Samantha and Sean; and, 3) her father and mother, Cliff and Doris Weaver. In opposition, Employer offered the testimony of: 1) Decedent's mother and father, Helen Yvonne and Llewellyn Johns; 2) Decedent's sister, Dana Anne Plows; and, 3) Decedent's cousin, Clifford Bell.

Claimant and her children lived with Decedent for six years following her divorce from her ex-husband, Mr. Thomas. Claimant testified that she separated from Decedent for three months near the end of the relationship due to Decedent's alcoholism. Claimant testified that she and the children moved back in with Decedent when he "found the Lord" and that they became "husband/wife" on April 11, 1999. Claimant further testified that Decedent: 1) was responsible for disciplining the children, 2) was involved with the children's activities, such as school and sporting events, 3) would pay the household bills, 4) would take family vacations with Claimant and the children, 5) was the only father figure in Samantha's daily life, and 6) would be introduced by Claimant, in public, as the children's stepfather. However, Claimant also testified that she received child support from Mr. Thomas and that the children's health insurance is covered under Mr. Thomas' policy.

Mr. Thomas testified that Decedent took care of the children like a stepfather, and Samantha referred to Decedent as her "step-dad." Mr. Thomas further testified that he considers himself the children's father and that he has visitation with the children every other weekend.

Samantha testified that Decedent took her on outings, helped her with school work, and that she called Decedent "dad" or "step-dad." Sean testified that Decedent took him on outings, helped him with school work, and attended his sporting events. He thought of Decedent as his step-father because Decedent was always there for him when he needed help. However, Sean admitted that he said to Decedent, "I don't have to listen to you, you're not my father." (Finding of Fact (FOF) ¶ 5b.)

Claimant's father, Mr. Weaver, testified that Decedent attended 100 percent of the children's sporting events, unless work kept him from being there, and that he wanted to take Sean to a father-and-son banquet as his father. However, Mr. Weaver also testified that he did not consider Claimant and Decedent to be married and that Mr. Thomas would see the children every other weekend. Claimant's mother, Mrs. Weaver, testified that Decedent would take the children on outings and treated the children as a father figure. She also testified that she assumed that Claimant and Decedent were husband and wife because "Claimant wouldn't live with someone just for the sake of it...." (FOF ¶ 7c.)

In opposition to Claimant's petitions, Decedent's mother, Mrs. Johns, testified that Claimant and Decedent were not married. In fact, she verified, as the administrator of Decedent's estate, that on his application for employment he checked the box indicating that he was "single," and that Mrs. Johns was his beneficiary. (FOF ¶ 8c; Employer Ex. D1–D2.) She further testified that Decedent marked the Employee Insurance Enrollment Form as "single," that he checked off a health care form as "single," he checked his W–4 form as "single," and on an employment update form, Decedent listed Claimant as "girl-friend." (Id.; Employer Ex. D2–D5.) Mrs. Johns further testified that Decedent took to Claimant's children well, but told her that it was hard disciplining and raising someone else's children, and that he wanted children of his own. (FOF ¶ 8d.)

Mr. Johns, Decedent's father, testified that Decedent never intended to marry Claimant and wanted to leave the relationship because he could not discipline the children.

Mrs. Plows, Decedent's sister, testified that Decedent was not allowed to discipline the children and that Claimant and Decedent often argued about the discipline. She further testified that Decedent never intended to marry Claimant. Mr. Bell, Decedent's cousin, testified that Decedent and Claimant were not married and the children would refer to Decedent as "Dave."

Upon reviewing the evidence, the WCJ found Claimant's testimony not credible with regard to her allegation that she was Decedent's common-law wife. They owned separate property, had separate bank accounts, and Claimant listed herself as single with two dependents on a W–4 form. However, the WCJ did find Claimant credible that Decedent acted *in loco parentis* to the children because Decedent provided financial support; assisted with homework; attended school and extracurricular activities; was named as an emergency contact on both the children's school and medical records; engaged in multiple activities with the children, both as a family and individually; and was involved in various parental duties including discipline. (FOF ¶ 15.) The WCJ further found Mr. Thomas credible when he testified that Decedent: took care of the children like a stepfather, disciplined the children, contributed money to the household spending, and gave money to Claimant as well as the children. (FOF ¶ 16.) The WCJ found Mr. and Mrs. Weaver's testimony credible that Decedent treated the children in a fatherly manner and that Claimant and Decedent were not married. (FOF ¶ 17–18.) The WCJ found Samantha and Sean credible that they referred to Decedent as

their stepfather, that Decedent engaged in many activities with them, and that Decedent disciplined them and helped them with their homework. (FOF ¶ 19–20.) The WCJ further found Mr. Johns, Mrs. Johns, Mr. Bell and Mrs. Plows credible only with regard to the fact that Decedent and Claimant were not married, and that Decedent had no intention of marrying Claimant because he wanted children of his own and Claimant could not provide that. (FOF ¶ 21–24.)

On September 24, 2003, the WCJ issued an order and opinion stating, among other things, that Claimant did not meet her burden to prove that she was Decedent's common-law wife and, therefore, was not entitled to workers' compensation benefits. However, the WCJ did find that she met her burden of proving that Decedent acted *in loco parentis* to the children and he, therefore, granted the Fatal Claim Petition as to the children. (Conclusions of Law (COL) ¶¶ 3–4.) Subsequently, Employer appealed to the Board arguing that the children are not dependents of the Decedent under the Act. Claimant cross-appealed arguing that the WCJ erred in finding Employer had a reasonable contest of the Fatal Claim Petition for the children.

The Board, without taking additional evidence, filed its opinion on November 23, 2004, affirming in part and reversing in part the WCJ's order. The Board reversed the WCJ's order in so far as he held that Decedent acted *in loco parentis* to the children. The Board focused on Decedent's *intent* to function as the children's parent and to assume all responsibilities commensurate with that position. (Bd. Decision at 9.) It noted that Mr. Thomas credibly testified that he pays child support and provides health care and half the cost of orthodontic care for the children. The Board stated that Mr.

Thomas credibly testified that: 1) he continued to have visitation with the children while they lived with Decedent; 2) he attended their school activities regularly; and 3) he disciplined the children. Further, the Board noted that Employer presented competent evidence that Decedent did not claim the children as dependents on his work employment forms. *Id.* at 9–10. Additionally, the Board noted that, while there was evidence showing Decedent related well to the children, there was no evidence that Decedent voluntarily assumed the role of a parent. Further, Employer's witnesses all credibly testified that Decedent wanted to have children of his own and did not intend to marry Claimant, which would have made him the children's legal stepfather. Therefore, the Board reversed the WCJ and held that the evidence of record shows that the children were not dependent on Decedent nor did Decedent voluntarily assume the role of parent to the children.

■ With regard to Claimant's cross appeal, the Board rejected Claimant's argument and found that Employer's contest was reasonable in light of the fact that it reversed the WCJ's grant of the Fatal Claim Petition on behalf of the children. This appeal ensued.[2]

Section 307 of the Act provides that a child is eligible for death benefits if such child:

> [I]s under the age of eighteen ... If members of decedent's household at the time of his death, the terms "child" and "children" shall include step-children, adopted children and children to whom

he stood in loco parentis, and children of the deceased....

77 P.S. § 562.

■ The Decedent will be considered to stand *in loco parentis* to the children only if the children can prove that they were members in the decedent's household and actual dependency. *Hertz Corp. v. Workers' Compensation Appeal Bd. (Johnson)*, 724 A.2d 395, 397 (Pa.Cmwlth. 1999), *petition for allowance of appeal denied*, 559 Pa. 696, 739 A.2d 1060 (1999). In order to establish this relationship, the decedent must *intend* to be placed in the situation of the child's lawful parent. *Id.* In doing so, more than mere voluntary assumption of financial support is necessary. *Id.* In addition, the decedent must also participate in other parenting duties, such as disciplining the child, preparing meals, engaging in leisure activities, selecting the child's clothing and obtaining medical care. *Id.* (citing *Celotex Corp. v. Workmen's Compensation Appeal Bd. (Hargust)*, 41 Pa.Cmwlth.416, 399 A.2d 171 (1979)). In short, it must be the decedent's *intent* to function as a parent and assume the day-to-day responsibilities commensurate with such a position.

■ The courts evaluate the facts of each case in order to determine whether a decedent stands *in loco parentis* to a child. For example, where the decedent only provided financial support and did not undertake any parenting duties, our Supreme Court found that the decedent did not intend to assume a parental role to the child. *Kransky v. Glen Alden Coal Co.*, 354 Pa. 425, 47 A.2d 645 (1946). There,

---

2. Our scope of review is limited to a determination of whether there has been a violation of constitutional rights, whether an error of law has been committed, or whether all necessary findings of fact are supported by substantial evidence. *Guthrie v. Workers' Compensation Appeal Bd. (Keystone Coal Co.)*, 767

A.2d 634, 636 n. 4 (Pa.Cmwlth.2001). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Bd. (Lucas)*, 140 Pa.Cmwlth.75, 591 A.2d 762, 764 n.5 (1991).

the child's biological parents were legally separated with custody granted to the mother. In the mother's separation agreement, the father expressly agreed to provide for and support the child, which he did not do, nor did the mother seek enforcement of the agreement. The mother and the child, who were seeking dependency death benefits, lived with the maternal grandmother and her boyfriend, the decedent. The child was a member of decedent's household for only five months and, other than the decedent's financial support, there was no evidence of record that the decedent intended to assume the role of father to the child. The Supreme Court held that the decedent had no intent to stand *in loco parentis* to the child. The Court further explained that the decedent's support of the child over the five month period was as much attributable to his desire to please the grandmother as it was to his intent to function as a surrogate father.

In contrast, where the decedent did partake in other parenting duties, our Court, in *Celotex,* held that the decedent stood *in loco parentis* to the minor claimants so as to entitle them to death benefits under the Act. There, the evidence indicated that the decedent lived in the same home with the children and their mother for one year and seven months and that, together, they constituted a household. In addition, the decedent assumed the role of father in the household in that he disciplined the children, selected their clothing, took them on picnics, played with them, paid for one third of maintaining the household, shared in the payment of clothing, and was called "father" by them. *Celotex,* 399 A.2d at 173.

More recently, this Court extended death benefits in *Hertz,* finding that the decedent-grandmother stood *in loco parentis* to her grandchild even though the

child's mother was financially able and willing to provide support. There, the decedent was awarded custody of her grandchild when the child's mother entered the United States Army in 1983, and provided all financial, disciplinary, education and daily care duties related to the child. That same year, the mother received an honorable discharge from the army and moved back into the decedent's household. However, the decedent remained responsible for the care and support of the child. Two years later, the mother moved out of the decedent's home and, subsequently, married; the child desired to remain with the decedent. At all times from 1983 through the decedent's death in 1989, the child remained with and dependent upon the decedent, even though the mother was financially able and willing to care for the child.

■ Claimant argues that the Board erred here because the credible evidence shows that Decedent not only provided financial support to the children, but also participated in other parental duties. (Claimant Br. at 15.) In that regard, Claimant contends that the facts here are most similar to those in *Celotex.*

We agree with Claimant. As in *Celotex,* Decedent lived in the same home with the children, provided financial support, assisted with homework, attended school and extracurricular activities, was named as an emergency contact on both the children's school and medical records, engaged in multiple activities with the children, both as a family and individually, and was involved in various parental duties including discipline. Importantly, the children here considered Decedent to be their father or step-father. Decedent undertook this role for six years, even longer than the decedent in *Celotex* (one year and seven months). The fact that Mr. Thomas paid child support, had visitation, and provided

the children with health care insurance, while relevant, is not controlling where the decedent also intended to stand *in loco parentis* to the children. *Hertz,* 724 A.2d at 398. It is true that Decedent's employment forms indicated that he was "single" and had no dependents; however, when compared to all of the parenting duties which Decedent undertook for the children, this evidence is not enough to tip the scale in favor of Employer. Therefore, we must disagree with the Board that Decedent did not stand *in loco parentis* to the children.[3]

Based on the foregoing opinion, we reverse the order of the Board.

### ORDER

NOW, June 14, 2005, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed.

---

**3.** This Court notes that Claimant, in her Petition for Review, raised the issue of whether the Board erred in determining that Employer's contest of Claimant's Fatal Claim Petition was reasonable. However, Claimant does not argue this issue in her brief and, therefore, we need not address it.