# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JBS USA Holdings, Inc.,       :
           Petitioner        :
                              :
         v.             :    No. 1660 C.D. 2018
                              :
Workers' Compensation Appeal     :
Board (Vazquez),                  :
           Respondent     :


Danny Vazquez,               :
           Petitioner        :
                              :
         v.             :    No. 1688 C.D. 2018
                              :    Submitted: October 25, 2019
Workers' Compensation Appeal     :
Board (JBS USA Holdings, Inc.),    :
           Respondent     :


**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** Judge
                **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                **HONORABLE ELLEN CEISLER,** Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: January 24, 2020**

Before the Court are cross-petitions for review filed by JBS USA Holdings, Inc. (Employer) and Johely Vazquez on behalf of her three children related to a fatal claim petition filed in connection with the death of Danny Vazquez (Decedent). The Workers' Compensation Appeal Board (Board) affirmed a decision by a Workers' Compensation Judge (WCJ) granting the fatal claim petition, but reversed to the

extent the WCJ found one of the children was entitled to benefits as a dependent of Decedent. Both parties seek review of that Order, which we affirm.

## I. BACKGROUND

### A. *Proceedings before the WCJ*

The tragic facts of this case are as follows. Decedent worked for Employer at its rendering plant. On February 18, 2015, Decedent was stabbed to death by a coworker, Peter Atem, while at work.[1] Ms. Vazquez, who lived with Decedent and their two children, as well as a third child she had from a prior relationship (Child), filed a fatal claim petition asserting Decedent's death occurred in the course and scope of his employment with Employer and her three children were dependents of Decedent.[2] Employer denied the material allegations in its answer and asserted as an affirmative defense that there was personal animus between Decedent and his killer.

The matter was assigned to a WCJ who held a hearing at which Ms. Vazquez testified as follows.[3] Ms. Vazquez and the three children moved in with Decedent in October 2014. She and Decedent had been together since 2008 and lived together off and on until 2014. Decedent was the biological father of two of the children. The biological father of Child did not provide any support, and Ms. Vazquez did not know where he lived. Ms. Vazquez and Decedent were not married, as Ms. Vazquez

---

[1] The coworker attempted suicide immediately following the stabbing. He was subsequently convicted for first-degree murder in connection with Decedent's death.

[2] Although Ms. Vazquez initially claimed she was dependent on Decedent, she subsequently only sought benefits for the three children. Benefits for the two biological children have not been challenged. The only issue before the Court related to dependency is whether Child was dependent upon Decedent.

[3] The testimony of Ms. Vazquez is found in the reproduced record at pages 19a-33a and is summarized in finding of fact 5 of the WCJ Decision.

2

remained married to Child's father. In July 2014, Ms. Vazquez was diagnosed with cervical cancer and was unable to work. As a result, Decedent provided support for her and the three children. Decedent claimed all three children as dependents on his 2014 income tax return.

The parties also introduced a transcript of the criminal trial at which several of Decedent's coworkers testified as to the relationship between Decedent and Mr. Atem and the events leading up to Decedent's death. James Artis, who witnessed the stabbing, testified first as follows.[4] Mr. Artis never observed any problems between Decedent and Mr. Atem. Earlier on the day of the stabbing, he observed Mr. Atem jump on top of Decedent while Decedent was sitting in a chair taking a break. At first, he thought Decedent and Mr. Atem were roughhousing until he heard Decedent tell Mr. Atem to get off of him. After Decedent managed to get Mr. Atem off, Decedent kept asking Mr. Atem why he did that. Mr. Artis also asked Mr. Atem if Decedent did something to him, to which Mr. Atem nodded. Mr. Artis advised Mr. Atem that he should report it to the office. Decedent continued to ask why Mr. Atem jumped on him and stated that if Mr. Atem did not provide an answer, Decedent would have to report it to the office. Mr. Artis went back to work in the filter room, where Decedent was also working. During this time, Decedent kept asking why Mr. Atem jumped on him. Mr. Artis then heard Decedent screaming and saw Mr. Atem stab Decedent in the center of the chest and neck area. Decedent left and Mr. Artis followed, helping Decedent up a nearby hill to the office.

---

[4] The testimony of Mr. Artis is found in the reproduced record at pages 158a-89a and 196a-226a and is summarized in finding of fact 14 of the WCJ Decision.

3

Kevin Brown, another coworker, testified at the criminal trial as follows.[5] He knew Decedent approximately three years as a coworker but not socially. He knew Mr. Atem 10 years and considered him a friend. Mr. Brown and Mr. Atem rode together to and from work the last four years. He saw Decedent and Mr. Atem together at lunch or on breaks and was not aware of any issues between them. On the morning of the stabbing, Mr. Brown picked Mr. Atem up and drove him to work. Mr. Atem appeared to be in a good mood. In December 2014, Mr. Brown noticed that Mr. Atem was late when he was picking him up, and when Mr. Brown inquired, Mr. Atem told Mr. Brown that he had a lot of stuff on his mind.

Jeffrey Greiser, the first shift supervisor, also testified at the criminal trial as follows.[6] He knew Decedent and Mr. Atem from work. Decedent was training as his assistant. Mr. Greiser testified Decedent and Mr. Atem worked well together and would help one another out; he was not aware of any problems between them. Prior to the incident, Mr. Atem had been out of work for a week so he needed a doctor's note to return, per Employer's policy. The day before the incident, Mr. Atem was sent home from work to obtain the required note. Missing work without a note could affect an employee's work status as the employee accrues points, six of which could result in termination. Mr. Atem would have been aware of the points system. Mr. Greiser was not aware of an incident the day before in which Decedent allegedly pulled a chair out from under Mr. Atem, but heard rumors after the incident.

---

[5] The testimony of Mr. Brown is found in the reproduced record at pages 321a-42a and is summarized in finding of fact 15 of the WCJ Decision.

[6] The testimony of Mr. Greiser is found in the reproduced record at pages 345a-80a and is summarized in finding of fact 15 of the WCJ Decision.

4

Jason Miller, the human resources director for Employer, testified at the criminal trial as follows.[7] Mr. Atem had unexcused absences from work February 11-13 and February 16, 2015. Mr. Atem did not clock into work on the day of the stabbing. Mr. Miller explained the point system and that employees may accrue six points in a six-month period. An employee may be fired based upon points. In the six months prior to the incident, Mr. Atem accrued nine points.

David Mattern, assistant supervisor, also testified at the criminal trial as follows.[8] Mr. Mattern knew Decedent and Mr. Atem from work. He also played poker with Mr. Atem one time. Mr. Mattern never saw any issues between them. On occasion, Mr. Mattern would provide Mr. Atem with a ride home. The day before the stabbing, Mr. Mattern took Mr. Atem home from work early so Mr. Atem could retrieve a doctor's note for work. Mr. Atem could not find the note and sat silently in Mr. Mattern's truck with his elbows on his knees until Mr. Mattern told Mr. Atem he needed to get out so Mr. Mattern could return to work.

Another coworker, Kevin Lee, testified at the criminal trial as follows.[9] Mr. Lee knew Decedent and Mr. Atem from work. According to Mr. Lee, Decedent and Mr. Atem had normal interactions, would borrow cigarettes off one another, and would joke around with each other. He was not aware of any issues, arguments, altercations, racial tension, or threats between them.

---

[7] The testimony of Mr. Miller is found in the reproduced record at pages 381a-413a and is summarized in finding of fact 15 of the WCJ Decision.

[8] The testimony of Mr. Mattern is found in the reproduced record at pages 417a-43a and is summarized in finding of fact 15 of the WCJ Decision.

[9] The testimony of Mr. Lee is found in the reproduced record at pages 443a-55a and is summarized in finding of fact 15 of the WCJ Decision.

5

Lastly, Ralph Hendricks, plant supervisor, testified at the criminal trial as follows.[10] He knew Decedent and Mr. Atem through work, although he did go to a poker game with Mr. Atem one time outside of work. He observed no issues between the two of them and none were reported to him. After the stabbing, he read in a newspaper article about an incident involving a chair in the lunchroom that allegedly occurred the day before the stabbing. After the incident, an employee said he saw Decedent kick a chair out from under Mr. Atem. Mr. Atem and Decedent previously spoke to Mr. Hendricks about issues at work but none of them involved one another. A few weeks to a month prior to the stabbing, Mr. Atem spoke to Mr. Hendricks about personal problems but nothing involving Decedent.

In addition to the coworkers who testified, Detective Jack Wittenberger's testimony from the criminal trial was also introduced as evidence before the WCJ. Detective Wittenberger testified in relevant part as follows.[11] Detective Wittenberger took a statement from Mr. Atem in the hospital the day after the incident. Mr. Atem told Detective Wittenberger that he "heard [Decedent] tell other people that he was going to destroy [Mr. Atem]." (Reproduced Record (R.R.) at 243a.) Mr. Atem admitted to starting the initial fight with Decedent, stating "[Decedent] took my picture many times and I was afraid that he would do something with those pictures." (*Id.* at 245a.) Mr. Atem also told police that Decedent kept demanding that Mr. Atem apologize or Decedent would go to the office and that Decedent would not let it go. Mr. Atem told Detective Wittenberger that "[Decedent] was messing with [him] for years" and that "[s]omeone told [him

---

[10] The testimony of Mr. Hendricks is found in the reproduced record at pages 455a-83a and is summarized in finding of fact 15 of the WCJ Decision.

[11] The testimony of Detective Wittenberger is found in the reproduced record at pages 227a-308a and is summarized in finding of fact 16 of the WCJ Decision.

Decedent] broke in[to] [Mr. Atem's] locker and . . . took pictures of [Mr. Atem]." (*Id.* at 248a.) No photographs of Mr. Atem were found on Decedent's phone. Detective Wittenberger also read into the record a copy of the suicide note found next to Mr. Atem, which read: "You think you can destroy my life in front of my family, friends and the [sic] all world [sic] and live. When you set out to destroy people life [sic] for no reason you make sure they dead [sic]. See you in hell. Life for life." (*Id.* at 252a.)

### B. WCJ Decision

Based upon the above evidence, the WCJ granted the fatal claim petition as to all three children. In doing so, the WCJ found that Decedent's two biological children were under 18 years old and were financially dependent upon Decedent. In addition, the WCJ found Child was financially dependent upon Decedent, based on Decedent claiming Child as a dependent on his tax return, and that Child resided with Decedent and Ms. Vazquez. Accordingly, the WCJ found "Decedent served in loco parentis to" Child and as all three children's guardian. (WCJ Decision, Findings of Fact (FOF) ¶¶ 10, 18.)

The WCJ further found that it was undisputed that Decedent was fatally stabbed at work and Employer did not rebut the presumption that an injury occurring on Employer's premises was work-related. Specifically, the WCJ found:

> There was no evidence of record, either before this court or during the criminal proceedings, that there was any personal animosity between Mr. Atem and [] Decedent. In fact, [] Employer's own witnesses testified that Mr. Atem and [] Decedent appeared to work well, were observed laughing and joking and often helped each other during the course of a workday. This court found it significant that Mr. Atem was fearful that his employment was going to be terminated because of unexcused absences. Additionally, Mr. Atem demonstrated himself to

7

be emotionally unstable in that he believed [] Decedent was taking photographs of him. There were no photographs recovered from [] Decedent's phone. The impending termination of Mr. Atem's employment was wholly unrelated to his relationship or interactions with [] Decedent. [] Employer argued that the note Mr. Atem wrote which calls for a "life for life" must have been directed to [] Decedent[;] however Mr. Atem stated to Detective Wittenberger that he did not hate [] Decedent. Mr. Artis testified that he told the two employees that if either one of them had a problem, he should report it to the office. In light of his already precarious employment status, Mr. Atem would likely conclude that [] Decedent was going to go to the office to register a complaint and thereby trigger Mr. Atem's termination from employment. The evidence of record, therefore, places the events of February 18, 2015[,] squarely within the course and scope of [Decedent's] employment. The evidence of record fails to demonstrate that personal animus played any role whatsoever in the tragic murder of [Decedent].

(*Id.* ¶ 21.) Additionally, the WCJ found "[t]here [was] no evidence of record that Mr. Atem's written statement was addressed or referred to [] Decedent." (*Id.* ¶ 20.)

### C. Board Opinion and Order

Employer appealed the WCJ Decision to the Board, which affirmed in part and reversed in part. The Board affirmed the grant of the fatal claim petition, reasoning that "the WCJ determined that Mr. Atem's motivation was work-related and that finding is supported by the substantial evidence of record." (Board Opinion at 13.) The Board rejected Employer's argument that Mr. Atem's statements related to Decedent "destroy[ing]" him, "messing with him" and taking his photograph, established a preexisting relationship with preexisting animosity, particularly in light of the number of witnesses who testified that there were no issues between Decedent and Mr. Atem and observed them joking and helping one another. (*Id.*) The Board also noted that "Mr. Atem's statements reference things pertaining to his and

8

Decedent's employment and do not, as [Employer] argues, specifically establish an intention on [Mr. Atem's] part to inflict injuries for purely personal reasons." (*Id.*)

The Board found Employer's reliance upon *Kandra v. Workmen's Compensation Appeal Board (Hills Department Store)*, 632 A.2d 1069 (Pa. Cmwlth. 1993), misplaced. Unlike in *Kandra* where the attack was prompted by a refusal to pick up a piece of garbage, the Board found, here, "the impetus for the attack had to do with Decedent's employment." (Board Opinion at 14.) The Board agreed with Employer that the Workers' Compensation Act (WC Act)[12] does not require preexisting animosity, simply intentional infliction of injuries by a third party for personal reasons unrelated to the victim's employment. However, it did not agree that the stabbing incident was "wholly unassociated with Decedent's employment." (*Id.*) Given the evidence presented and drawing all reasonable inferences therefrom in favor of the children, as the prevailing parties, the Board affirmed the WCJ's grant of the fatal claim petition.

The Board reversed the WCJ's Decision to the extent it awarded benefits to Child. To be entitled to benefits, the Board stated Decedent had to stand in loco parentis to Child. (*Id.* at 15.) Financial support alone, the Board explained, was insufficient. According to the Board, a party could establish a decedent stood in loco parentis to a child by showing the decedent participated in parenting duties, such as preparing meals, disciplining the child, engaging in leisure activities, or taking the child to appointments. (*Id.* (citing *Johns v. Workers' Comp. Appeal Bd. (Balmer Bros. Concrete Works)*, 877 A.2d 525 (Pa. Cmwlth. 2005)).) Here, the Board found "the record is completely devoid of any evidence to establish that [Decedent]

---

[12] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 – 1041.4, 2501-2710.

9

intended to function as [Child's] parent." (*Id.* at 17.) Accordingly, the Board reversed the WCJ's award of benefits for Child.

## II.    PARTIES' ARGUMENTS

Both parties now seek review of the Board's Order: Employer as to personal animus, and Ms. Vazquez as to dependency.[13] Employer argues that Section 301(c)(1) of the WC Act, 77 P.S. § 411(1), excludes from compensation injuries caused by personal animus. Here, Employer argues, the evidence shows Mr. Atem's motive for the killing was long-standing and personal. As evidence, Employer cites Mr. Atem telling police he attacked Decedent because Decedent took photographs of him and said he was going to destroy Mr. Atem. It also cites as evidence Mr. Atem's comment that Decedent was "messing" with him for years. (R.R. at 248a.) Employer argues the WCJ erred in finding the motive was work-related because Mr. Atem attacked Decedent in the chair before Decedent said he was going to report the incident to the office.

Ms. Vazquez responds that Employer did not meet its burden of showing animus between Mr. Atem and Decedent. Ms. Vazquez notes five witnesses testified there was no animus between the two. Rather, substantial evidence supports the WCJ's finding that Mr. Atem was in trouble and afraid of losing his job. Ms.

_____

[13] Our review is limited to determining whether constitutional rights were violated, errors of law were committed, or necessary findings of fact are supported by substantial evidence. *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support the conclusion." *Wells-Moore v. Workmen's Comp. Appeal Bd. (McNeil Consumer Prods. Co.)*, 601 A.2d 879, 881 (Pa. Cmwlth. 1992). Furthermore, when considering whether the WCJ's findings are supported by substantial evidence, we must consider "the evidence in a light most favorable to the party [that] prevailed before the [WCJ]." *Brewer v. Workers' Comp. Appeal Bd. (EZ Payroll & Staffing Sols.)*, 63 A.3d 843, 848 (Pa. Cmwlth. 2013).

Vazquez asserts Mr. Atem did not attack Decedent with the knife until after Decedent threatened to report the first incident. Finally, Ms. Vazquez argues the statements upon which Employer relied were related either to work or the workplace.

As for dependency, Ms. Vazquez argues Decedent provided more than just financial support. He was the only male parental figure in Child's life, especially when Ms. Vazquez was battling cancer. Ms. Vazquez argues Decedent took steps to make provisions for Child, and cites *Renovich v. Bethlehem Mines Corporation*, 200 A. 122 (Pa. Super. 1938), for support that a decedent may stand in loco parentis to a child when the child's parent is otherwise disabled. Here, Ms. Vazquez argues the Board capriciously disregarded her disability when it reversed the award of benefits for Child.

Employer responds that Section 307 of the WC Act, 77 P.S. § 562, governs dependency and here, the only evidence of dependency is that Child lived with Decedent and Decedent provided financial support, which, according to Employer, is insufficient under the law.

## III.    DISCUSSION

### A.    *Personal animus*

To be compensable, an injury must have occurred within the course of one's employment, but "an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment" is not compensable. 77 P.S. § 411(1). This is often referred to as the personal animus exception, which is an affirmative defense that an employer may use to rebut the presumption that an injury, even one resulting from an assault, occurring on an employer's property is work-related. *M & B Inn*

11

*Partners, Inc. v. Workers' Comp. Appeal Bd. (Petriga)*, 940 A.2d 1255, 1259 (Pa. Cmwlth. 2008). An employer may rebut the presumption with evidence that the assault was not related to work. *Helms v. Workmen's Comp. Appeal Bd. (U.S. Gypsum Co.)*, 654 A.2d 106, 108 (Pa. Cmwlth. 1995). An employer bears a heavy burden to rebut the presumption. *LeDonne v. Workers' Comp. Appeal Bd. (Graciano Corp.)*, 936 A.2d 124, 129 (Pa. Cmwlth. 2007); *Wills Eye Hosp. v. Workmen's Comp. Appeal Bd. (Dewaele)*, 582 A.2d 39, 40 (Pa. Cmwlth. 1988). "For the personal animus exception to apply there must be some intention on the part of the assailant to inflict the injury for personal reasons." *M & B Inn Partners*, 940 A.2d at 1259. The assailant's motivation is a question of fact for the WCJ to determine. *Id.*; *Repco Prods. Corp. v. Workmen's Comp. Appeal Bd.*, 379 A.2d 1089, 1091 (Pa. Cmwlth. 1977). We have explained that "[t]he party asserting the personal animus exception must establish that the assailant had a **pre[]existing relationship** with, or a **pre[]existing animosity** toward, the employee and that he or she **intended to injure** the employee for reasons **personal** to the assailant." *M & B Inn Partners*, 940 A.2d at 1259.

Employer argues there is not substantial evidence to support the WCJ's finding that there was no personal animus between Decedent and Mr. Atem. We disagree. In reviewing a substantial evidence challenge, we "consider the evidence as a whole, view the evidence in a light most favorable to the party [that] prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in" that party's favor. *Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (quotation omitted). It does not matter if there is evidence that supports a contrary finding; the only question is whether there is evidence that supports the findings that were made. *McCabe v.*

12

*Workers' Comp. Appeal Bd. (Dep't of Revenue)*, 806 A.2d 512, 515 (Pa. Cmwlth. 2002). "The WCJ is the ultimate fact finder and has complete authority for making all credibility determinations." *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750, 755 (Pa. Cmwlth. 2002).

Here, Mr. Artis, Mr. Brown, Mr. Greiser, Mr. Mattern, Mr. Lee, and Mr. Hendricks all testified that they did not observe any problems between Mr. Atem and Decedent. The only incident between Mr. Atem and Decedent before the stabbing occurred earlier that same morning when Mr. Atem, for unknown reasons, jumped on top of Decedent while Decedent was sitting in a chair at work.[14] No explanation was ever provided for the incident, which Mr. Artis originally thought was mere horseplay between the two. As for Mr. Atem's statements to police that Decedent was "messing with [him] for years" and that "[s]omeone told [Mr. Atem that Decedent] broke in[to] [Mr. Atem's] locker and . . . took pictures of [Mr. Atem]," (R.R. at 248a), these incidents, too, appear to be connected in some manner to work. While Mr. Atem played poker with some of his coworkers outside of work, there is no evidence of record that Mr. Atem and Decedent knew or associated with one another outside of the workplace. Therefore, any animus that did exist between the two had to arise from work or be related to the workplace.

The instant matter is unlike *LeDonne*, in which the decedent was murdered while traveling for work. The decedent's wife was subsequently implicated in his murder. In reviewing a fatal claim petition related to the decedent's son, the WCJ denied benefits agreeing with the employer that the evidence showed the murder was the result of personal animus, and the Board affirmed. Noting that a WCJ is free to

---

[14] There was brief testimony related to rumors that Decedent pulled a chair out from under Mr. Atem the day before, but from the evidence presented, it does not appear as though those rumors were ever substantiated.

make reasonable and logical inferences from the evidence and that the WCJ found the murder was precipitated by the wife's affair and her pecuniary interest in the decedent's death, this Court also affirmed, concluding there was sufficient evidence to support the finding that the employer met its burden of asserting the personal animus exception. *LeDonne*, 936 A.2d at 131. We reiterate, here, there is no evidence of personal animus between Mr. Atem and Decedent.

Rather, this matter is more akin to *The Bachman Company v. Workmen's Compensation Appeal Board (Spence)*, 683 A.2d 1305 (Pa. Cmwlth. 1996). In *Bachman*, a claimant suffered injuries in an altercation with another customer at a gas station. The claimant was getting gasoline for his work vehicle when another customer physically assaulted him at the pumps after a verbal altercation. A referee[15] awarded the claimant benefits, concluding the injuries were work-related and that the employer did not meet its burden of establishing the injuries were for reasons personal to the assailant and unrelated to the claimant's work. The Board affirmed. On appeal to our Court, we rejected the employer's argument that the attack was precipitated by personal ill will towards the claimant. We explained that the assault occurred because the claimant did not comply with the assailant's request for the claimant to back up the large work truck. *Id.* at 1310. We stated "[b]ecause [the assault] was precipitated by [the c]laimant's inability to back up the company truck, [the assailant]'s attack on [the c]laimant was directly connected to [the c]laimant's employment." *Id.* Like the claimant in *Bachman*, the attack by Mr. Atem on Decedent appears to have been precipitated by something that occurred at work, such as Decedent's alleged breaking into Mr. Atem's work locker or his taking of

---

[15] WCJs were formerly known as referees.

14

photographs.[16]  In short, we cannot conclude that the WCJ and Board erred in finding Employer did not meet its heavy burden of showing Mr. Atem killed Decedent for reasons personal to him and unrelated to work.  *M & B Inn Partners*, 940 A.2d at 1259.  This is particularly true given the liberal construction of the WC Act.  *Repco Prods.*, 379 A.2d at 1090-91.

### B.    Dependency

Nor can we find the Board erred in concluding that Ms. Vazquez did not meet her burden of showing that Child, who was not Decedent's biological child, was entitled to benefits.  Under the WC Act, compensation is available to children of the decedent, and the term "children" is defined to include "step-children, adopted children and children to whom [the decedent] stood in loco parentis."  77 P.S. § 562.  Here, the child at issue was not a step-child or adopted by Decedent; therefore, the relevant inquiry is whether Decedent stood in loco parentis to Child.[17]

In *Hertz Corporation v. Workers' Compensation Appeal Board (Johnson)*, 724 A.2d 395, 397 (Pa. Cmwlth. 1999), we explained that because the WC Act does not define in loco parentis, for guidance, we look at the case law, which provides:

> To establish an in loco parentis relationship one must intend to put him or herself in the situation of a lawful parent to the child, with reference to the parent's office and duty of making provision for the child. *D'Auria v. Liposky*, . . . 177 A.2d 133 ([Pa. Super.] 1962).  More than mere voluntary assumption of financial support is necessary to establish in loco parentis status. *Id.*  Additionally, other indices of parenting must exist such as disciplining the child, preparing meals, engaging in leisure activities, selecting the child's clothing and obtaining medical care.

---

[16] Although no photographs of Mr. Atem were found on Decedent's phone, photographs of other coworkers sleeping at work were found.

[17] The child must also have been a member of the decedent's household at the time of death, which is not at issue here.  *Kransky v. Glen Alden Coal Co.*, 47 A.2d 645, 646 (Pa. 1946).

15

> *Celotex Corp[.] v. Workmen's Comp[.] Appeal B[d.] (Hargust)*, . . .
> 399 A.2d 171 ([Pa. Cmwlth.] 1979). In short, one must intend to
> function as the child's parent and assume all daily responsibilities
> commensurate with such a position.

*Hertz*, 724 A.2d at 397. *See also Johns*, 877 A.2d at 529. The Court evaluates whether a decedent stood in loco parentis to a child based on the facts of each case. *A-Jon Contractors v. Workers' Comp. Appeal Bd. (DiMarzio)*, 915 A.2d 725, 727-28 (Pa. Cmwlth. 2007).

Here, the WCJ found Decedent claimed Child on his 2014 tax return as a dependent and served as Child's guardian. (FOF ¶¶ 9-10.) The WCJ also found that Decedent was the sole source of financial support for Ms. Vazquez and the three children when she was diagnosed with cancer in July 2014 and was unable to work. (*Id.* ¶ 5.) The Board properly concluded this evidence was insufficient to warrant an award of benefits, and based upon our precedent, we are constrained to agree. There is no doubt that Decedent provided financial support for Child, but this alone, is not enough to establish that Decedent stood in loco parentis to Child. *Kransky v. Glen Alden Coal Co.*, 47 A.2d 645, 646 (Pa. 1946); *Johns*, 877 A.2d at 529; *Hertz*, 724 A.2d at 397. There is no evidence that Decedent "intend[ed] to function as . . . [C]hild's parent and assume[d] all daily responsibilities commensurate with such a position." *Hertz*, 724 A.2d at 397. For instance, in *Johns*, this Court reversed an order of the Board wherein the Board concluded the decedent did not stand in loco parentis to the children. We held that the evidence presented established the decedent, for at least six years, assisted with homework, attended school functions, was listed as an emergency contact for the children, and disciplined the children, in addition to living with and providing financial support for the children. *Johns*, 877

A.2d at 530. There was also testimony that the children considered the decedent a father or stepfather. *Id.* In contrast, the record is devoid of such evidence here.

Ms. Vazquez asks the Court to infer such evidence based upon her cancer diagnosis and her inability to work. Ms. Vazquez argues Decedent necessarily provided such services in light of Ms. Vazquez's health issues. For support, Ms. Vazquez cites *Renovich*, a case from our sister court more than 80 years ago.[18] In that case, the issue was whether a grandfather stood in loco parentis to his grandchildren when the grandchildren's father was alive and lived in the same household. *Renovich*, 200 A. at 122. The referee and Board found the grandfather did, and that determination was affirmed on appeal. The Superior Court noted that the children's father was disabled and unable to work to provide support or maintenance to the children. *Id.* at 123-24. Since *Renovich* was decided, the courts have refined what is required to stand in loco parentis to a child for the purposes of Section 307, and have held that financial support, without more, is not enough. Moreover, even assuming *Renovich* remains good law, there is no evidence here that Ms. Vazquez's diagnosis rendered her so disabled that she was unable to provide support or maintenance to the children. Ms. Vazquez merely testified she was unable to work, which, at best, goes to her financial ability to support the children. Absent some type of evidence that Decedent also engaged in parental duties, such as disciplining Child, preparing meals, or attending school functions, Decedent's financial support of Child alone is not enough under our precedent.

---

[18] Prior to this Court's inception, the Superior Court presided over workers' compensation appeals.

## IV. <u>CONCLUSION</u>

We acknowledge that this case presents a tragic set of facts. However, neither party met its burden of proof. Employer did not successfully rebut the presumption that Decedent's stabbing death, which occurred on Employer's premises during work hours, was caused by reasons personal to Mr. Atem. Nor did Ms. Vazquez, based upon our precedent, establish sufficient evidence to support the award of benefits to Child. For the foregoing reasons, we discern no error and, accordingly, affirm the Board's Order.

 

 

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JBS USA Holdings, Inc., : 
               Petitioner : 
                : 
                : 
           v. : No. 1660 C.D. 2018
                : 
Workers' Compensation Appeal : 
Board (Vazquez), : 
             Respondent : 


Danny Vazquez, : 
               Petitioner : 
                : 
           v. : No. 1688 C.D. 2018
                : 
Workers' Compensation Appeal : 
Board (JBS USA Holdings, Inc.), : 
             Respondent : 


# **O R D E R**


**NOW**, January 24, 2020, the Order of the Workers' Compensation Appeal Board, in the above-captioned matters, is **AFFIRMED.**


               _____
               **RENÉE COHN JUBELIRER,** Judge